607 S.E.2d 818

**Gary D. WACHTER, Petitioner Below, Appellant,**

v.

**Sylvia L. WACHTER, Defendant Below, Appellee.**

**No. 31598.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Nov. 12, 2004.

Christopher D. Janelle, Frank M. Aliveto, Sutton & Janelle, PLLC, Martinsburg, for the Appellant.

David P. Greenberg, Greenberg & Scales, PLLC, Martinsburg, for the Appellee.

DAVIS, Justice.

In this appeal by a former husband seeking to reduce or terminate his spousal support obligation, we are asked to determine whether the Circuit Court of Morgan County erred in finding no de facto marriage, as defined in W. Va.Code § 48–5–707(a)(2)(2001) (Repl.Vol.2001), between the former wife and her paramour. We find no error in the circuit court's ruling. Accordingly we affirm. In addition, we award the former wife her reasonable attorney's fees expended to defend this appeal.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Gary D. Wachter, appellant herein and petitioner below (hereinafter Mr. Wachter), and Sylvia L. Wachter, appellee herein and respondent below (hereinafter Ms. Wachter), were married on November 19, 1960. The couple remained married for approximately thirty-one years and three children were born of the marriage. Mr. and Ms. Wachter last resided together as husband and wife in 1990. In July 1991, after the parties' separation, Ms. Wachter began working at the Walmart Store in Winchester, Virginia, where she is currently employed.

The Wachters were granted a divorce on May 26, 1992, by order of the circuit court of Morgan County, West Virginia.[1] Settlement of the martial property was bifurcated and subsequently resolved by order of the circuit court of Morgan County dated January 5, 1994.[2] The order granted, inter alia, an

---

1. At the time of the Wachter's divorce in 1992, their three children were all emancipated adults.

2. In the January 5 order, it was acknowledged that Ms. Wachter was eighteen years old at the

award of permanent alimony to Ms. Wachter in the amount of $150 per week.

Thereafter, in or about 1996, Ms. Wachter began cohabiting with Mr. Leon Householder in the former marital home, which she was awarded in the divorce settlement. On February 13, 2002, Mr. Wachter filed a motion for reduction or termination of spousal support pursuant to W. Va.Code § 48–5–707 (2001) (Repl.Vol.2001)[3] in the Family Court of Morgan County, asserting that a de facto marriage existed between Ms. Wachter and Mr. Householder. The family court denied the motion.

According to the family court's findings, Ms. Wachter and Mr. Householder have maintained a conjugal relationship for several years, however, the family court concluded that they have not held themselves out as married, they own no real estate or personal property together, they are financially independent from each other and have no joint bank accounts or credit cards, they share very little in the way of expenses and have only jointly made nominal improvements to Ms. Wachter's dwelling. In addition, the family court observed that the discrepancy between Mr. Wachter's income and Ms. Wachter's income was substantially the same as it had been at the time the initial order granting permanent alimony was entered in 1994.[4] Based upon these findings, the family court concluded that Ms. Wachter's conduct did not rise to the level of a de facto marriage and that there was no substantial change in the parties' circumstances that would justify a modification of alimony.

Mr. Wachter appealed the family court order to the Circuit Court of Morgan County, claiming that the family court erred in find-

ing that the relationship between Ms. Wachter and Mr. Householder was not a de facto marriage. Before the circuit court, Mr. Wachter alleged that there was uncontroverted evidence that Ms. Wachter and Mr. Householder used the same mailing address, that Ms. Wachter had referred to Mr. Householder as her husband, and that Ms. Wachter wore an engagement ring given to her by Mr. Householder.

The circuit court disagreed with Mr. Wachter's interpretation of the evidence. By order entered February 3, 2003, the circuit court found that the evidence regarding the various factors relied upon by Mr. Wachter was in dispute. The circuit court then ruled that "the Family Court Judge did not abuse his discretion by finding that the conduct of [Ms. Wachter] and Mr. Householder does not rise to the level of a de facto marriage," and that "the Family Court Judge did not ignore 'uncontroverted facts' in his findings." Based upon these conclusions, the circuit court denied Mr. Wachter's petition for appeal.

Mr. Wachter then appealed to this Court to reverse the circuit court's order and find a de facto marriage between Ms. Wachter and Mr. Householder. Ms. Wachter filed a cross appeal complaining that the circuit court erred by refusing to award her attorney's fees. We granted the petition for appeal, and now affirm the February 3, 2003, order of the Circuit Court of Morgan County.

## II.

### STANDARD OF REVIEW

In this case, we are asked to review an order of the Circuit Court of Morgan

---

3. For the full text of W. Va.Code § 48–5–707 (2001) (Repl.Vol.2001), see *infra* note 6.

4. At the time Mr. Wachter was ordered to pay $150 per week to Ms. Wachter in permanent alimony his gross annual income exceeded hers by $34,632. At the time of the family court's order of November 22, 2002, Mr. Wachter's gross annual income exceeded Ms. Wachter's by approximately $34,416.

time of the marriage and that she did not complete her high school education due to the marriage and subsequent birth of the couple's first child. Throughout the vast duration of the marriage, Ms. Wachter was not employed outside the home. The January 5 order further acknowledged that, during the marriage, Mr. Wachter graduated from college, obtained a master's degree, and then a master's degree plus thirty hours. Following Mr. Wachter's graduation from college, he was employed as a school teacher for the Washington County, Maryland, Board of Education. He has maintained that employment to this day.

County that denied appeal of an order rendered by the Family Court of Morgan County, and in so doing, adopted the family court's findings. With respect to our review of such an order by a circuit court, we have held that

[i]n reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. pt. 2, *Lucas v. Lucas*, 215 W.Va. 1, 592 S.E.2d 646 (2003). The specific question we are asked to review relates to the factual finding that there was no de facto marriage between Ms. Wachter and Mr. Householder. Therefore, under *Lucas*, we apply a clearly

5. The appropriate standard for our consideration of Ms. Wachter's cross appeal seeking attorney's fees will be set out in our discussion of that issue below. *See infra* Section III. B. of this opinion.

6. W. Va.Code § 48–5–707 states:

(a)(1) In the discretion of the court, an award of spousal support may be reduced or terminated upon specific written findings by the court that since the granting of a divorce and the award of spousal support a de facto marriage has existed between the spousal support payee and another person.

(2) In determining whether an existing award of spousal support should be reduced or terminated because of an alleged de facto marriage between a payee and another person, the court should elicit the nature and extent of the relationship in question. The court should give consideration, without limitation, to circumstances such as the following in determining the relationship of an ex-spouse to another person:

(A) The extent to which· the ex-spouse and the other person have held themselves out as a married couple by engaging in conduct such as using the same last name, using a common mailing address, referring to each other in terms such as "my husband" or "my wife", or otherwise conducting themselves in a manner that evidences a stable marriage-like relationship;

(B) The period of time that the ex-spouse has resided with another person not related by consanguinity or affinity in a permanent place of abode;

erroneous standard. To the extend that our resolution of this factual question requires us to interpret W. Va.Code § 48–5–707, our review is de novo. Having set out the proper standards for our review, we move on to the substantive issue raised.[5]

## III.

## DISCUSSION

### A. De facto Marriage

■ Mr. Wachter argues that the circuit court erred in finding no de facto marriage between Ms. Wachter and Mr. Householder. Mr. Wachter complains that the family court's order omitted pertinent evidence that Mr. Householder conducts business in Ms. Wachter's home, keeps his business equipment there, does maintenance and upkeep on the home, and has made improvements to the home. Mr. Wachter asserts that the family court misconstrued W. Va.Code § 48–5–707[6]

(C) The duration and circumstances under which the ex-spouse has maintained a continuing conjugal relationship with the other person;

(D) The extent to which the ex-spouse and the other person have pooled their assets or income or otherwise exhibited financial interdependence;

(E) The extent to which the ex-spouse or the other person has supported the other, in whole or in part;

(F) The extent to which the ex-spouse or the other person has performed valuable services for the other;

(G) The extent to which the ex-spouse or the other person has performed valuable services for the other's company or employer;

(H) Whether the ex-spouse and the other person have worked together to create or enhance anything of value;

(I) Whether the ex-spouse and the other person have jointly contributed to the purchase of any real or personal property;

(J) Evidence in support of a claim that the ex-spouse and the other person have an express agreement regarding property sharing or support; or

(K) Evidence in support of a claim that the ex-spouse and the other person have an implied agreement regarding property sharing or support.

(3) On the issue of whether spousal support should be reduced or terminated under this subsection, the burden is on the payor to prove by a preponderance of the evidence that a de facto marriage exists. If the court finds that the payor has failed to meet [the] burden of proof on the issue, the court may award rea-

in that it determined in its findings what factors of a de facto marriage were not present, while omitting those factors which were present.

Ms. Wachter responds that the family court and the circuit court both correctly determined that a de facto marriage does not exist between herself and Mr. Householder. She notes that W. Va.Code § 48–5–707 places the burden of proof on the payor, Mr. Wachter, to prove by a preponderance of the evidence that a de facto marriage exists. She asserts that the orders of the family court and the circuit court demonstrate that they considered the factors of W. Va.Code § 48–5–707 in light of the evidence and found that Mr. Wachter failed to meet his burden.

We begin our analysis with a review of the relevant statute. West Virginia Code § 48–5–707 was adopted by the West Virginia Legislature in 2001 and has been addressed by this Court on only one prior occasion. In the case of *Lucas v. Lucas*, 215 W.Va. 1, 4, 592 S.E.2d 646, 649, the circuit court affirmed an order of the family court finding a de facto marriage existed between the former wife and her paramour, and reducing the spousal support obligation of the former husband from $850.00 monthly to $700.00 monthly. The former husband appealed to this Court seeking, inter alia, to have his spousal support obligation further reduced or altogether terminated. *Id.* Consequently, the focus of the *Lucas* Court was primarily

on the procedure used to determine whether and to what extent a spousal support obligation should be reduced pursuant to W. Va.Code § 48–5–707 *after* a finding of de facto marriage has been made. *See* Syl. pts. 5 and 8 of *Lucas*.[7] Unlike the case at hand, there was no challenge to the finding of the *existence* of a de facto marriage in *Lucas*. It is the question of how a de facto marriage is determined under W. Va.Code § 48–5–707(a)(2) that we undertake today.

West Virginia Code § 48–5–707(a)(2) states:

In determining whether an existing award of spousal support should be reduced or terminated because of an alleged de facto marriage between a payee and another person, the court should elicit the nature and extent of the relationship in question. The court should give consideration, without limitation, to circumstances such as the following in determining the relationship of an ex-spouse to another person:

(A) The extent to which the ex-spouse and the other person have held themselves out as a married couple by engaging in conduct such as using the same last name, using a common mailing address, referring to each other in terms such as "my husband" or "my wife", or otherwise conducting themselves in a manner that evidences a stable marriage-like relationship;

sonable attorney's fees to a payee who prevails in an action that sought to reduce or terminate spousal support on the ground that a de facto marriage exists.

(4) The court shall order that a reduction or termination of spousal support is retroactive to the date of service of the petition on the payee, unless the court finds that reimbursement of amounts already paid would cause an undue hardship on the payee.

(5) An award of rehabilitative spousal support shall not be reduced or terminated because of the existence of a de facto marriage between the spousal support payee and another person.

(6) An award of spousal support in gross shall not be reduced or terminated because of the existence of a de facto marriage between the spousal support payee and another person.

(7) An award of spousal support shall not be reduced or terminated under the provisions of this subsection for conduct by a spousal sup-

port payee that occurred before the first day of October, one thousand nine hundred ninety-nine.

(b) Nothing in this subsection shall be construed to abrogate the requirement that every marriage in this state be solemnized under a license or construed to recognize a common law marriage as valid.

7. Syllabus point 5 of *Lucas* states:

Under West Virginia Code § 48–5–707 (2001), the essential question is whether the de facto marriage, the circumstances of which having been fully developed through evaluation of the factors enunciated in the statute, warrants the reduction or termination of the ex-spouse payor's financial obligations by creating a substantial change in circumstances altering the recipient's need for spousal support. *See infra* note 8 for text of Syllabus point 8 of *Lucas*.

(B) The period of time that the ex-spouse has resided with another person not related by consanguinity or affinity in a permanent place of abode;

(C) The duration and circumstances under which the ex-spouse has maintained a continuing conjugal relationship with the other person;

(D) The extent to which the ex-spouse and the other person have pooled their assets or income or otherwise exhibited financial interdependence;

(E) The extent to which the ex-spouse or the other person has supported the other, in whole or in part;

(F) The extent to which the ex-spouse or the other person has performed valuable services for the other;

(G) The extent to which the ex-spouse or the other person has performed valuable services for the other's company or employer;

(H) Whether the ex-spouse and the other person have worked together to create or enhance anything of value;

(I) Whether the ex-spouse and the other person have jointly contributed to the purchase of any real or personal property;

(J) Evidence in support of a claim that the ex-spouse and the other person have an express agreement regarding property sharing or support; or

(K) Evidence in support of a claim that the ex-spouse and the other person have an implied agreement regarding property sharing or support.

■ In examining this code section, we first consider whether the language contained therein is ambiguous. Upon careful reading, we find no ambiguity.

"When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

Syl. pt. 4, *Perito v. County of Brooke*, 215 W.Va. 178, 597 S.E.2d 311 (2004). Accordingly, we will discuss the application of this statutory provision in accordance with its plainly expressed legislative intent, which is to provide guidance for the determination of whether the nature and extent of a relationship is such that the relationship amounts to a de facto marriage.[8]

■ In the introductory paragraph of W. Va.Code § 48–5–707(a)(2), the legislature has directed that courts endeavoring to determine whether the nature and extent of a relationship rises to the level of a de facto marriage should "give consideration, without limitation, to circumstances such as" the enumerated factors that follow. By utilizing the phrase "such as," the legislature has made clear that the factors listed for consideration are not intended to be an exhaustive list. *See Donovan v. Anheuser–Busch, Inc.*, 666 F.2d 315, 327 (8th Cir.1981) ("The phrase 'such as' is not a phrase of strict limitation, but is a phrase of general similitude indicating that there are includable other matters of the same kind which are not specifically enumerated by the standard."); *Doe v. Kohn, Nast & Graf, P.C.*, 862 F.Supp. 1310, 1320 (E.D.Pa.1994) ("The use of the words 'such as' indicates that this list is illustrative and is not intended to be exclusive."); *Abenante v. Fulflex, Inc.*, 701 F.Supp. 296, 301 (D.R.I. 1988) ("The use of the language 'such as' is

---

**8.** If a court finds that a relationship does amount to a de facto marriage, then an additional analysis must be performed to determine whether a spousal support obligation should be modified as a result of the relationship. *See* Syl. pt. 8, *Lucas v. Lucas*, 215 W.Va. 1, 592 S.E.2d 646 ("Where a finding of a de facto marriage is made under West Virginia Code § 48–5–707 (2001), a factual investigation into the financial circumstances, income, and expenses of the support recipient, including contributions in money or in kind by the cohabitant, is necessary in order to determine the recipient's continuing need, if any, for support. Based upon such financial evaluation, a comparison should be made between the financial status and need of the parties to the divorce which originally justified a spousal support award and the financial status and need of those two parties at the time the petition for modification is filed, taking into account the effects of any assistance provided as a consequence of the de facto marriage. The results of that comparison then dictate the issue of reduction or termination of spousal support.").

descriptive rather than exclusive."); *Matter of Barker–Fowler Elec. Co.*, 141 B.R. 929, 937 (Bankr.W.D.Mich.1992) ("The use of the term 'such as' means the court is authorized to grant forms of relief from stay other than those expressly articulated . . . ."). Obviously, then, any evidence presented with respect to a given relationship that is relevant to establish the existence or non-existence of a de facto marriage is to be considered by the deciding court. Moreover, we find it is equally clear that, because the factors listed within § 48–5–707(a)(2) are merely intended as a guide, there is no requirement that all, or even most, of the factors be present in order to establish a de facto marriage. Rather, courts must look at each case individually to determine whether the evidence preponderates toward a finding of de facto marriage. Accordingly, we hold that, when a court is asked to determine whether a relationship rises to the level of a de facto marriage under W. Va.Code § 48–5–707(a)(2)(2001) (Repl.Vol.2001), the court should use the factors enumerated within that section of the code as a guide for its decision, and should also consider any other evidence presented by the parties that is relevant to establishing the existence or non-existence of a de facto marriage.

Returning to the facts of the instant case, Mr. Wachter complains that the family court, when deciding that there was no de facto marriage in this case, improperly focused only on the factors of W. Va.Code § 48–5–707(a)(2) that are not present in the relationship between Ms. Wachter and Mr. Householder, while omitting those factors which were present. We disagree with Mr. Householder's contentions. In reviewing the family court's ruling, the circuit court expressly addressed and rejected each of the factors asserted by Mr. Wachter as demonstrating a de facto marriage. Specifically, Mr. Wachter alleged that there was uncontroverted evidence that Ms. Wachter and Mr. Householder used the same mailing address, that Ms. Wachter had referred to Mr. Householder as her husband, and that Ms. Wachter wore an engagement ring given to her by Mr. Householder.

Contrary to Mr. Wachter's assertions, the circuit court found that the evidence regarding the mailing address used by Mr. Householder was in dispute, with Mr. Householder asserting that he received his mail at a post office box, and with Scott Wachter, the parties' son, testifying that he had seen magazines at the home but could not recall what address was thereupon printed. Likewise, the circuit court found that the evidence of Ms. Wachter referring to Mr. Householder as her husband was disputed. In this regard, James Wachter, the parties' nephew, testified that he asked Ms. Wachter how her "husband," meaning Mr. Householder, was doing and she replied that he was fine. Ms. Wachter, on the other hand, testified that her nephew inquired how Leon (Mr. Householder) was doing. With respect to the engagement ring, the circuit court noted that Ms. Wachter and Mr. Householder acknowledge that the ring symbolizes their love and commitment, but that they deny it is an engagement ring. Mr. Householder characterized the ring as a "friendship ring or dinner ring," while Ms. Wachter explained that it represented a commitment, and was a cocktail ring.

In addition to the foregoing findings, the circuit court commented that

[Ms. Wachter] and Mr. Householder have cohabited together in the parties form[er] marital home since on or about 1996. They have also maintained a conjugal relationship for several years. They have jointly made small improvements to the home. Mr. Householder keeps some business equipment there. However, this Court is of the opinion that these factors do not give rise to the existence of a de facto marriage.

Finally, the circuit court remarked

The statute contains several elements for the court to consider in making its determination. [Ms. Wachter] and Mr. Householder do not hold themselves out as a married couple. They do not use the same last name. [Ms. Wachter] owns the home being occupied by [herself] and Mr. Householder. Mr. Householder owns a home in Florida where he stays anywhere between 2–4 months out of the year. [Ms.

Wachter] may visit Florida 1–2 weeks in that time. They own no real estate or personal property together. They have no joint bank accounts or credit cards. [Ms. Wachter] and Mr. Householder are financially independent of one another. [Ms. Wachter] and Mr. Householder both have wills and life insurance and neither have designated the other as a beneficiary in their wills or life insurance.

The circuit court could not have more plainly demonstrated that it considered all of the factors relevant to the issue of the existence of a de facto marriage, and simply did not find one existed between Ms. Wachter and Mr. Householder.

■ We believe the strongest evidence of a de facto marriage in this particular case lies in the duration of the continuing conjugal relationship between Ms. Wachter and Mr. Householder—approximately eight years. Absent the presence of other persuasive factors, however, it appears that courts have not relied upon the duration of a relationship alone to find a de facto marriage or other non-traditional marital relationship. *See Rose v. Csapo,* 359 N.J.Super. 53, 61, 818 A.2d 340, 344 (2002) (" 'Cohabitation is not defined or measured solely or even essentially by "sex" ... [but] involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.' " (citation omitted)). Looking to analogous relationships, such as common law marriages, for guidance, it is revealed that it is the duration *and character* of a relationship that must be considered. *See People v. Lucero,* 747 P.2d 660, 665 (Colo.1987) ("The two factors that most clearly show an intention to be married are cohabitation *and a general understanding or reputation among persons in the community in which the couple lives that the parties hold themselves out as husband and wife.*" (emphasis added)); *Hatfield v. Hatfield,* No. 94 CA 07, 1995 WL 23984, at *4 (Ohio Ct.App.1995) (Unpublished opinion) ("Although evidence of cohabitation alone will not prove a common law marriage and an agreement must also be proved, the agreement may be inferred from the cohabitation or from other circumstantial evidence. If there is direct evidence that there was no agreement of marriage, some courts hold that this negates any inference which might otherwise be drawn from the cohabitation. But there are cases which base a finding of common law marriage upon well established and long continued cohabitation in the face of evidence that no express agreement was ever made.) *Id. In general, the existence of a common law marriage has come to depend to a very great extent upon the duration and character of the relationship between the parties.*" (emphasis added) (citing Homer Harrison Clark, The Law of Domestic Relations in the United States § 2.4, at 50 (2d ed.1988)). *See Generally* Kathryn S. Vaughn, *The Recent Changes to the Texas Informal Marriage Statute: Limitation or Abolition of Common-law Marriage?,* 28 Hous. L.Rev. 1131, 1154 (October 1991) ("Because proving the existence of an agreement is often so difficult, most states that recognize common-law marriage allow their courts to infer an agreement from the other elements of common-law marriage-cohabitation *and public representation of a marital relationship.*" (emphasis added) (footnote omitted)). Thus, it would be improper to find a de facto marriage between Ms. Wachter and Mr. Householder based solely on the length of their relationship without the presence of other convincing factors indicating the character of their relationship was that of a marriage.

■ With respect to the burden of proof, the statute is clear. Following the statute, we expressly hold today that where the payor of spousal support seeks to have his or her support obligation reduced or terminated based upon the existence of a de facto marriage between the recipient of the spousal support and another, "the burden is on the payor to prove by a preponderance of the evidence that a de facto marriage exists." W. Va.Code § 48–5–707(a)(3). In this case, the burden of proof was borne by Mr. Wachter and he simply failed to establish that any of the factors in W. Va. § 48–5–707(a)(2)

weighed toward the finding of a de facto marriage. He also failed to present any other evidence relevant to establishing a de facto marriage. Under these circumstances, it simply cannot be said that the circuit court clearly erred in finding that Mr. Wachter failed to meet his burden. Accordingly, we affirm the circuit court's rulings.

### B. Cross Appeal

 Ms. Wachter asserts as a cross appeal that both the family court and the circuit court erred in failing to award her attorney's fees. She admits that neither court expressly denied her request for attorney's fees. Nevertheless, she contends that this Court should grant her attorney's fees for the proceedings in the lower courts. She likewise argues that she is entitled to attorney's fees for defending Mr. Wachter's appeal to this Honorable Court. Mr. Wachter, apparently conceding that both lower tribunals denied Ms. Wachter's request for attorney's fees, replies that an award of attorney's fees in this matter is unwarranted absent the showing of an abuse of discretion by the Family Court Judge.

 With respect to our standard for reviewing an order regarding attorney's fees in a divorce action, we have held that

> [i]n divorce actions, an award [or denial] of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. pt. 4, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996). Likewise, when, as in this case, a party requests his or her attorney's fees for appellate proceedings before the circuit court, the same standard of review applies. Therefore, we hold that a circuit court's determination whether to award attorney's fees in divorce actions is discretionary. In exercising its discretion, the circuit court should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request. The circuit court's ruling will not be disturbed on appeal absent an abuse of discretion. We now endeavor to apply these standards to Ms. Wachter's cross appeal.

The issue of attorney's fees is addressed in W. Va.Code § 48–5–707(a)(3), which states

> On the issue of whether spousal support should be reduced or terminated under this subsection, the burden is on the payor to prove by a preponderance of the evidence that a de facto marriage exists. *If the court finds that the payor has failed to meet burden of proof on the issue, the court may award reasonable attorney's fees to a payee who prevails in an action that sought to reduce or terminate spousal support on the ground that a de facto marriage exists.*

(Emphasis added). Plainly, under West Virginia Code § 48–5–707(a)(3), either of the lower courts could have granted attorney's fees to Ms. Wachter had they deemed such an award to be appropriate. Neither court granted Ms. Wachter's request for attorney's fees, yet neither court expressly denied the request or placed into the record any indication of what the basis of their refusal might have been. Thus, the record submitted on appeal is absolutely void of any findings upon which we might base a meaningful review of this issue. In the absence of an express ruling reflected in the record before this Court setting out the grounds therefor, Ms. Wachter's appeal of this issue must be deemed waived. *See State ex rel. Preissler v. Dostert*, 163 W.Va. 719, 727–28, 260 S.E.2d 279, 284–85 (1979) ("It is well-settled that a court of record speaks only through its record and anything not appearing on the record does not exist in law. *State ex rel.*

*Browning v. Oakley*, [157] W. Va. [136], 199 S.E.2d 752 (1973); syl. pt. 3, *Hudgins v. Crowder & Freeman, Inc.*, 156 W.Va. 111, 191 S.E.2d 443 (1972); syl. pt. 4, *State ex rel. Mynes v. Kessel*, 152 W.Va. 37, 158 S.E.2d 896 (1968) and cases cited therein.").

■ Ms. Wachter has also requested attorney's fees for defending Mr. Wachter's appeal to this Court. We find an award to Ms. Wachter of her attorney's fees incurred in defending this appeal to be appropriate. *See, e.g., Ray v. Ray*, 216 W.Va. 11, 16, 602 S.E.2d 454, 459 (2004) (per curiam) ("We find that, under the facts of this case, the requested attorney's fees and costs are appropriate." (citations omitted)). *Accord Wilson v. Wilson*, 214 W.Va. 14, 18, 585 S.E.2d 14, 18 (2003) (per curiam); *Rogers v. Rogers*, 197 W.Va. 365, 374, 475 S.E.2d 457, 466 (1996); *Ball v. Wills*, 190 W.Va. 517, 526, 438 S.E.2d 860, 869 (1993). Accordingly, we order Mr. Wachter to pay to Ms. Wachter her reasonable attorney's fees incurred only in defending the appeal to this Court. In the event that the parties are unable to agree on the amount of reasonable attorney's fees, "the circuit court, upon application of either party, should conduct a hearing to determine the amount of such fees." *Phillip Leon M. v. Greenbrier County Bd. of Educ.*, 199 W.Va. 400, 409, 484 S.E.2d 909, 918 (1996).

## IV.

### CONCLUSION

For the reasons explained in the body of this opinion, the order of the Circuit Court of Morgan County finding no de facto marriage between Ms. Wachter and Mr. Householder is affirmed. In addition, Mr. Wachter is ordered to pay to Ms. Wachter her reasonable attorney's fees for defending this appeal.

Affirmed.

Justice McGRAW dissents.