718 S.E.2d 793

**Barbie Dawn PAUGH (formerly Linger), Petitioner**

v.

**Edward L. LINGER, Respondent.**

**No. 101410.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2011.

Decided Nov. 18, 2011.

James Wilson Douglas, Esq., James Wilson Douglas, L.C., Sutton, WV, for Petitioner.

Delby B. Pool, Esq., Amy L. Lanham, Esq., Delby B. Pool & Associates, Clarksburg, WV, for Respondent.

1. Although the bulk of the parenting plan is typed, the phrase "and Father shared, 50/50" is hand-written and initialed by both parties. Oth-

**PER CURIAM:**

The petitioner herein and respondent below, Barbie Dawn Paugh (formerly Linger), appeals from two orders entered on October 12, 2010, by the Circuit Court of Lewis County, West Virginia, affirming two orders of the Family Court of Lewis County. Specifically, Ms. Paugh contends that the family and circuit courts erred by finding that she violated the terms of a parenting plan and by awarding attorney's fees to the respondent herein and petitioner below, Edward Lee Linger. For the reasons that follow, the Court affirms the circuit court's finding that Ms. Paugh violated the parenting plan, but reverses the award of attorney's fees.

## I. FACTS AND PROCEDURAL HISTORY

Ms. Paugh and Mr. Linger were married on January 1, 1997, and have two children; Kenton, born May 4, 2001 (now age ten), and Kami, born April 22, 2005 (now age six). The parties separated on April 21, 2008, and a final divorce decree was entered by the Family Court of Lewis County, West Virginia, on December 18, 2009. Incorporated into that divorce decree is an Agreed Permanent Parenting Plan, signed by the parties on December 15, 2009, and ratified by the family court on December 18, 2009. Under that plan, Ms. Paugh is designated as the primary residential parent, with the children having visitation with Mr. Linger on Wednesday evenings and every other weekend, as well as several weeks in the summer.

With regard to decision making for the children, the parenting plan provides that "[d]ay to day decisions will be made by the parent who has the care of the children." Importantly, however, "[*m*]*ajor life decisions* regarding the children, will be made by the *Mother* and Father shared, 50/50." [1] The parenting plan additionally provides, under the title "Dispute Resolution,"

1. In matters of dispute, both Parties shall immediately discuss the problem between themselves and attempt to re-

er alterations appear throughout the document, written by hand and initialed by both parties.

solve the dispute in a reasonable time and manner, within 30 days of the dispute.

2.  If this fails, the Parties shall attempt to resolve the problem by eliciting assistance from a counselor or mediator who will be agreed to by both parties.

3.  The cost of this process, when indicated shall be paid by the Parties proportion [sic] to the percentages established by the Revised Income Shares Formula.

The plan establishes guidelines for enforcement, tracking the language of West Virginia Code § 48–9–501(a) (2009).[2] The plan provides that

> [i]f, upon a parental complaint, the court finds a parent intentionally and without good cause violated a provision of the court-ordered parenting plan, it shall enforce the remedy specified in the plan or, if no remedies are specified or they are clearly inadequate, it shall find the plan has been violated and order an appropriate remedy, . . .

The plan sets forth several appropriate remedies, including that a court may "require the violating parent to pay a civil penalty, in the amount of not more than $100.00 for the first offense . . . to be paid to the parent education fund as established under [W. Va.Code § 48–9–104]." In addition, "the Court may require a violating parent to pay a nonviolating parent's Court costs, reasonable attorney's fees, and any other reasonable expenses in enforcing the plan[.]"

This case concerns a dispute between the parties regarding the children's schooling. The parties' older child, Kenton, was enrolled at Peterson Central Elementary School ("Peterson"), located in Weston, West Virginia, from kindergarten through third grade. On February 1, 2010, Ms. Paugh placed both Kenton and Kami, who would be entering kindergarten that fall, on a waiting list to be enrolled at St. Patrick Catholic School ("St. Patrick"), also in Weston. Mr. Linger was not informed of or consulted about this act; instead, he learned of the intended school change from the children and the school counselor at Peterson.

On February 10, 2010, Mr. Linger sent Ms. Paugh a letter indicating that he had learned of her plan to change the children's school and expressing his disapproval. In that letter, he challenged her decision to discuss the school change with the children before discussing the issue with him. He further stated that sending the children to a private, Catholic school was a "huge decision" with which he disagreed. In an emailed response that same evening, Ms. Paugh indicated that she had planned to discuss the issue with Mr. Linger but had wanted to find out if the children would want to change schools first. She then set forth an extensive list of reasons why she felt that St. Patrick would be a better choice for the children, including the quality of the education, reducing Kenton's school-related anxiety, and her own recent employment at St.

2.  West Virginia Code § 48–9–501(a) provides:
    (a) If, upon a parental complaint, the court finds a parent intentionally and without good cause violated a provision of the court-ordered parenting plan, it shall enforce the remedy specified in the plan or, if no remedies are specified or they are clearly inadequate, it shall find the plan has been violated and order an appropriate remedy, which may include:
    (1) In the case of interference with the exercise of custodial responsibility for a child by the other parent, substitute time for that parent to make up for time missed with the child;
    (2) In the case of missed time by a parent, costs in recognition of lost opportunities by the other parent, in child care costs and other reasonable expenses in connection with the missed time;
    (3) A modification of the plan, if the requirements for a modification are met under section

9–209, section 9–401, 402 or 403 of this article, including an adjustment of the custodial responsibility of the parents or an allocation of exclusive custodial responsibility to one of them;
(4) An order that the parent who violated the plan obtain appropriate counseling;
(5) A civil penalty, in an amount of not more than one hundred dollars for a first offense, not more than five hundred dollars for a second offense, or not more than one thousand dollars for a third or subsequent offense, to be paid to the parent education fund as established under section 9–104;
(6) Court costs, reasonable attorney's fees and any other reasonable expenses in enforcing the plan; and
(7) Any other appropriate remedy.

Patrick as a substitute teacher. A series of letters between the parties followed in which each firmly stated their position; Ms. Paugh strongly favored enrollment at St. Patrick and Mr. Linger strongly opposed such enrollment.

On April 20, 2010, following further discussion with Mr. Linger, Ms. Paugh enrolled Kami in kindergarten at Peterson for the following fall. On August 10, 2010, Ms. Paugh learned that St. Patrick had two openings for the fall term; she informed Mr. Linger of the openings, but he again refused to send the children to that school. Nevertheless, on August 19, 2010, Ms. Paugh unilaterally withdrew both Kami and Kenton from Peterson and enrolled them at St. Patrick. She did this without Mr. Linger's consent or knowledge.[3] On the same date, without realizing that Ms. Paugh had just enrolled the children at St. Patrick, Mr. Linger contacted Ms. Paugh via telephone and left a message proposing that the parties engage the assistance of a mediator to resolve the ongoing dispute, as provided for in the parenting plan. The children began attending St. Patrick on August 23, 2010. Upon learning of the change in schools, Mr. Linger filed a Petition for Expedited Relief in the family court, seeking an order requiring that the children be re-enrolled in the public schools of Lewis County.

After conducting a hearing, the family court entered an order on September 7, 2010, finding that Ms. Paugh had violated the parenting plan. The family court determined that the parenting plan requires the parties to share decision making responsibility for "major life decisions." Relying on West Virginia Code § 48–1–220 (2009), which provides that "significant life decisions" include decisions on education and spiritual guidance, the family court further found that Ms. Paugh's decision to enroll the children at St. Patrick constituted a "major life decision." Thus, because Ms. Paugh had acted without Mr. Linger's knowledge or consent in enrolling the children at St. Patrick and without initiating mediation to resolve the dispute, the family court found that Ms. Paugh violated the agreement contained in the parenting plan to share decision making "50/50" with Mr. Linger.

As a remedy, the family court ordered that the children be immediately re-enrolled at Peterson and that Ms. Paugh pay the $100.00 civil penalty set forth in West Virginia Code § 48–9–501(a) and the parenting plan, as well as attorney's fees to Mr. Linger. It left the amount of attorney's fees to be determined. The family court's order further provided that after Mr. Linger submitted his statement for attorney's fees, Ms. Paugh could request a hearing on the matter. Mr. Linger presented a statement for fees in the amount of $3,585.71, and Ms. Paugh did not request a hearing. On September 21, 2010, the family court entered a second order awarding attorney's fees to Mr. Linger in the amount of $1,750.00 plus interest. That order included no findings explaining the basis for the amount of the attorney's fees award.

Ms. Paugh instituted an appeal to the Circuit Court of Lewis County, which affirmed both of the family court's orders in separate orders entered on October 12, 2010. She now appeals both circuit court orders to this Court.

## II. STANDARD OF REVIEW

■ Our standard of review for this matter is well settled:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

---

**3.** Ms. Paugh informed Mr. Linger of her actions via a letter composed and mailed on August 19, 2010; on August 20, 2010, Mr. Linger sent a letter to Ms. Paugh, indicating that he believed the children were still enrolled at and would be attending Peterson, and reminding Ms. Paugh that the parenting plan required mediation if the parties could not reach agreement.

## III. DISCUSSION

### A. Violation of the Parenting Plan

The primary issue before the Court in this case is quite simple: did Ms. Paugh violate the parenting agreement when she enrolled the children at St. Patrick against Mr. Linger's wishes, without first attempting to resolve the dispute through counseling or mediation? As part of their divorce decree, the parties entered into a parenting plan in which they agreed that "[m]ajor life decisions regarding the children, will be made by the Mother and Father shared, 50/50." The family court found, and Ms. Paugh does not dispute, that the decision at issue in this case—whether to enroll the children in a private, parochial school—constitutes a "major life decision." Accordingly, pursuant to the parenting plan, any decision on this issue was to be "shared, 50/50." The plan further provides that in the event that a dispute arises that the parties are unable to resolve between themselves within a reasonable period of time, "the Parties shall attempt to resolve the problem by eliciting assistance from a counselor or mediator who will be agreed to by both parties."

Without question, Ms. Paugh did not attempt to resolve her disagreement with Mr. Linger by utilizing a counselor or mediator, despite having known that a disagreement existed for months before the beginning of the school year. Instead, Ms. Paugh removed the children from Peterson and enrolled them at St. Patrick over Mr. Linger's clearly expressed opposition to such a change. In so doing, she violated the express terms of the Agreed Permanent Parenting Plan. Accordingly, the family court did not err in its findings of fact or its application of the law to the facts, and the circuit court did not err in affirming the family court's order on this issue. See Syllabus, Carr v. Hancock, 216 W.Va. 474, 607 S.E.2d 803.

Ms. Paugh does not dispute the fact that she never attempted to resolve the disagreement with Mr. Linger through the method set forth in the parenting plan. Rather, she contends that the agreement to share decision making responsibility 50/50 should not be interpreted as requiring that unanimity must be achieved between the parties. She asks this Court to hold instead that, as the primary residential parent, she has the final decision making authority when the parties are unable to reach agreement. Alternatively, she contends that the family court should have considered the best interests of the children and issued a ruling on that basis.

In support of these positions, Ms. Paugh relies on several cases from other jurisdictions that have held either that the custodial parent should have final decision making authority or that a court should make such determination based on the best interests of the child. In each of the cases on which she relies, divorced parents disagreed over a major life decision regarding their child and sought resolution in the courts. Unlike the instant case, however, none of the cases cited by Ms. Paugh involved a dispute over a parenting plan in which one party acted without first utilizing the agreed-upon mechanism contained in the parenting plan for settling the disagreement. Indeed, several of the cited cases did not involve disputes over parenting plans, see Jones v. Walker, 29 Kan. App.2d 932, 33 P.3d 872 (2001); Taylor v. Taylor, 306 Md. 290, 508 A.2d 964 (1986), while others specifically noted that the parenting plans giving the parties joint decision-making authority did not contain a mechanism for resolving disputes, see Griffin v. Griffin, 699 P.2d 407 (Colo.1985); Asch v. Asch, 164 N.J.Super. 499, 397 A.2d 352 (1978). Thus, these cases are not instructive on the issue in this case.

Likewise, the remaining issues raised by Ms. Paugh in this appeal are all equally irrelevant, given her failure to seek mediation. Because the issue before the family court was whether Ms. Paugh violated the terms of the parenting agreement, the family court had no basis to consider the underlying merits of the parties' disagreement. Thus, the lower courts properly declined to consider Ms. Paugh's arguments that St. Patrick is the better school for the children and that Mr. Linger is "unreasonably" withholding consent.

Ms. Paugh's final assignment of error relating to the violation of the parenting plan is equally unconvincing. In this assignment, she contends that the family court failed to give adequate weight to the testimony of her "expert witness," Paul Derico, the Principal of St. Patrick.[4] Mr. Derico testified that, in his opinion, St. Patrick would be the better school for the children. This testimony, however, was not relevant to the issue before the family court, i.e., whether Ms. Paugh had violated the parenting plan and, therefore, the family court did not err in disregarding it.[5]

For these reasons, the Court affirms the lower courts' finding that Ms. Paugh violated the terms of the parenting agreement.

### B. Award of Attorney's Fees

Ms. Paugh challenges the family court's award of attorney's fees, arguing that the family court failed to set forth in writing the factors it relied upon in awarding $1,750.00 to Mr. Linger. She contends that, although the family court summarily referred to this Court's prior case of *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996), it made no specific findings under the factors listed for consideration in that decision.

In *Banker*, the case cited by the family court in its order issuing the fee award, this Court held that

[i]n divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

*Id.* at Syl. Pt. 4. Notably, this syllabus point specifically limits the test set forth therein to divorce actions. This Court, however, has previously recognized that the *Banker* factors "are equally relevant and applicable to proceedings stemming from, although following, the actual divorce." *Grose v. Grose*, 222 W.Va. 722, 729, 671 S.E.2d 727, 734 (2008). Here, the dispute centers on a violation of a parenting plan, which was incorporated into the parties' final divorce decree. Thus, the dispute stems from the divorce proceeding and the family court's reliance on *Banker* was proper.[6] *See Wachter v. Wachter*, 216 W.Va. 489, 607 S.E.2d 818 (2004) (utilizing

---

4. Mr. Derico was never actually qualified by the family court as an "expert witness."

5. Ms. Paugh argues in various places throughout her brief that this Court should view the parenting plan as having been entered into "pro se." She contends that the parties acted in the absence of their attorneys to finalize the agreement as is evidenced by the fact that the agreement is signed by both parties and the family court but not by the parties' attorneys. Mr. Linger contests the characterization of the parenting plan as being entered into pro se. He argues that although the final version was agreed to by the parties outside the presence of their attorneys, the agreement was only reached after an extensive mediation session in which the attorneys were present.

The record before the Court is insufficient to determine how much of the plan was agreed to in the presence of attorneys, although it is clear that both parties were represented by counsel in the underlying divorce case. More importantly, however, Ms. Paugh's argument based on her alleged status as "pro se" is unpersuasive. She

argues that, because she entered into the agreement pro se, the Court should give weight to her interpretation of "shared decision making." She contends that she understood the phrase "[*m*]ajor *life decisions* regarding the children, will be made by the *Mother* and Father shared, 50/50," to mean that she must *discuss* major life issues with Mr. Linger, but that she would have the ultimate authority to make the decision. This argument is not credible, however, given that the parenting plan specifically provides that the parties should utilize a counselor or mediator in the event that the parties cannot agree. Such services would be unnecessary if Ms. Paugh's interpretation of the clause were accurate and she actually had the final decision making authority over major life decisions.

6. In such instances, however, the *Banker* factor directing courts to consider "the degree of fault of either party making the divorce action necessary" should be modified by the court considering an award of attorney's fees to address the degree of fault of the parties with regard to the issue before the court at that time, not the original divorce.

*Banker* factors in awarding attorney's fees to a wife after a husband sought a reduction of alimony payments ten years after the divorce); *Dale Patrick D. v. Victoria Diane D.,* 203 W.Va. 438, 508 S.E.2d 375 (1998) (citing to *Banker* in reversing attorney's fees in a case regarding child visitation following a divorce).

In the instant case, neither party objects to the family court's reliance on *Banker.* Rather, Ms. Paugh argues that although the family court indicated it had relied on *Banker,* it failed to address any of the *Banker* factors in its order awarding attorney's fees. Mr. Linger, on the other hand, argues that the parenting plan itself provides that attorney's fees are one possible sanction for violations of the parenting plan. He further notes that West Virginia Code § 48–9–501(a) specifically lists attorney's fees as among the appropriate remedies for violations of parenting plans. Mr. Linger argues that the family court therefore was justified in awarding attorney's fees, and that the amount was reasonable, given that the family court substantially reduced his fee request from $3,585.71 to $1,750.00. Finally, Mr. Linger contends that because Ms. Paugh could have requested, but did not, a hearing on the issue of attorney's fees, she should be precluded from challenging the fee award now.

■ Under *Banker,* this Court's review of an award of attorney's fees is for abuse of discretion. 196 W.Va. 535, 474 S.E.2d 465 at Syl. Pt. 4. In this case, neither the family court's September 9, 2010, order granting attorney's fees to Mr. Linger, nor its September 21, 2010, order actually awarding $1,750.00 in attorney's fees to Mr. Linger contain any analysis of the *Banker* factors or any other explanation for the award. Thus, the orders provide no basis on which this Court can review the fee award for an abuse of discretion.

■ Consequently, because the Court is unable to determine whether the family court abused its discretion in determining the amount of fees to award, the order awarding fees to Mr. Linger is reversed. The issue is remanded to the circuit court with directions to remand to the family court for entry of an order making findings of fact which would allow a court to engage in meaningful review of the award of attorney's fees. *See Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 195, 342 S.E.2d 156, 161 (1986) (reversing and remanding an award of attorney's fees finding that "[t]he trial court's failure ... to make any findings of fact or conclusions of law regarding the calculation of the attorney's fee award gives this Court nothing upon which to base our review.")

## IV. CONCLUSION

For the reasons set forth herein, the final order of the Circuit Court of Lewis County, West Virginia, entered on October 12, 2010, finding that Ms. Paugh violated the parenting plan is affirmed. The October 12, 2010, final order affirming the award of attorney's fees, however, is reversed and remanded with directions to the circuit court to remand the issue to the family court for entry of a new order consistent with this opinion.

Affirmed, in part; reversed, in part; and remanded with directions.