IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

**FILED**

**October 4, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0418

MULTIPLEX, INC., a West Virginia Corporation,
ART R. POFF and PAMELA A. POFF, individually,
Petitioners

v.

TOWN OF CLAY,
Respondent

_____

Appeal from the Circuit Court of Clay County
The Honorable Richard A. Facemire, Judge
Civil Action No. 10-C-62

AFFIRMED IN PART; REVERSED IN PART; REMANDED
_____

Submitted: September 11, 2013
Filed: October 4, 2013

Harley E. Stollings, Esq.                    Carl J. Roncaglione, Jr, Esq.
Summersville, West Virginia                  Charleston, West Virginia
Counsel for Petitioners                      Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.    "'In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a *de novo* review.'  *Phillips v. Fox*, 193 W. Va. 657, 661, 458 S.E.2d 327, 331 (1995) (citation omitted)."  Syl. Pt. 2, *Walker v. W. Va. Ethics Com'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

2.    "'[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.'  Syl. Pt. 3, in part, *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959)."  Syl. Pt. 1, *Heldreth v. Rahimian*, 219 W. Va. 462, 637 S.E.2d 359 (2006).

3.    "'An order of injunction is of no legal effect * * * [Code, 53-5-9], unless the court requires a bond, or recites in the order that no bond is required for good cause, or unless the movant is a personal representative.'  Syl. Pt. 4, Syl., *Meyers v. Washington Heights Land Co.*, 107 W. Va. 632, 149 S.E. 819 (1929)."  Syl. Pt. 2, *State ex rel. Lloyd's Inc. v. Facemire*, 224 W. Va. 558, 687 S.E.2d 341 (2009).

4. "The proposition is generally true that an injunction once granted and perfected brings about a condition or status of persons and things that can only be set at large by a dismissal of the bill, or by formal order of dissolution." Syl. Pt. 1, *Atkinson v. Beckett*, 36 W. Va. 438, 15 S.E. 179 (1892).

5. "In an action on an injunction bond, when the injunction is only ancillary to the main object of the suit, counsel fees paid for services in the suit as a whole, are not recoverable." Syl. Pt. 2, *Bush v. Carden*, 111 W. Va. 631, 163 S.E. 54 (1932).

6. "When counsel fees and personal expenses are sought to be recovered as damages on an injunction bond, it is incumbent on the plaintiff to show either that injunction was the sole relief to which the suit pertained or that the fees and expenses were paid out solely for the purpose of procuring a dissolution of the injunction, as distinguished from expenditures for the hearing of the principal issues involved in the case." Syl. Pt. 2, *State ex rel. Meadow River Lbr. Co. v. Marguerite Coal Co.*, 104 W. Va. 324, 140 S.E. 49 (1927).

7. "'Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the

questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.' Syl. Pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986)." Syl. Pt. 12, *Horkulic v. Galloway*, 222 W. Va. 450, 665 S.E.2d 284 (2008).

Per Curiam:

After the petitioners, Multiplex, Inc., Art R. Poff and Pamela A. Poff, voluntarily dismissed their suit for injunctive relief, the Circuit Court of Clay County, West Virginia, ordered that the petitioners' $25,000.00 injunction bond be forfeited and paid over to the respondent, Town of Clay, to compensate respondent for its attorney fees and costs. On appeal, the petitioners argue that the bond was not subject to forfeiture in the absence of a finding that the underlying suit was filed in bad faith; that attorney fees and expenses are not recoverable "costs" within the meaning of West Virginia Code § 53-5-9 (2008); that the petitioners were not given a fair opportunity to contest whether the attorney fees and costs were incurred by the respondent in attempting to secure a dissolution of the bond; that the petitioners were not given a fair opportunity to contest whether the fees and costs met the standards set forth in *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986); and that the circuit court neither held a *Pitrolo* hearing nor performed a *Pitrolo* analysis.

Upon careful consideration of the parties' briefs, the appendix record,[1] the oral arguments, and this Court's precedents, we affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

On or about October 16, 2009, the petitioners, Multiplex, Inc. and its principals, Art R. Poff and Pamela Poff (hereinafter collectively referred to as "the petitioners"), entered into a construction contract with the respondent, Town of Clay, for various improvements to the town's water treatment plant. According to the contract, the project was designed by Boyles & Hildreth, which was to act as the project engineer and the Town of Clay's representative. The petitioners executed a Performance Bond[2] and an Agreement of Indemnity with United States Surety Company.

---

[1]We take this opportunity to remind litigants and counsel that Rule 6 of the West Virginia Rules of Appellate Procedure provides, in relevant part, "(b) . . . [t]he record on appeal should be selectively abridged by the parties in order to permit the Court to easily refer to relevant parts of the record and to save the parties the expense of reproducing the entire record." In this case, the parties submitted an appendix record consisting of 1,768 pages. Hundreds of these pages are either not relevant to the issues on appeal or are duplicates; in this latter regard, for example, the record contains five copies of a December 7, 2010, hearing transcript. Additionally, many of the parties' factual assertions in their briefs do not contain pinpoint citations to the appendix record, leaving this Court to determine where in the 1,768 pages of the record the accuracy of an assertion may be confirmed. As we have stated, "[j]udges are not like pigs, hunting for truffles buried in briefs[,]" *State Department of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995), and the same observation may be made with respect to appendix records.

[2]The Performance Bond was in the amount of $3,532,800.00.

2

On or about October 22, 2010, a dispute arose between the parties to the contract. The petitioners claimed that they were unable to proceed with the work until the project engineer answered certain questions and provided certain information; and further that the engineer's failure to issue change orders was causing unwarranted delay in compensation. The respondent claimed, in contrast, that the petitioners had walked away from the job without cause. Correspondence and discussions between the parties did not resolve the issues, and on November 16, 2010, the respondent notified the petitioners that it was considering declaring Multiplex to be in default. A conference was held on November 18, 2010, which again did not resolve the issues.

Thereafter, on December 3, 2010, the petitioners filed a Complaint for Preliminary Injunctive Relief in the Circuit Court of Clay County, against the Town of Clay, Boyles & Hildreth, and United States Surety,[3] alleging that

> [p]reliminary injunction to prevent the Town from declaring default is necessary to avoid immediate, permanent and irreparable harm to Multiplex, Inc. in regards to the Contract. Without responses to the pending inquiries, Multiplex has been unable to proceed with this critical schedule items and such has caused an additional delay in the schedule. Since that time, delays continue to occur and losses continue to accrue.

---

[3]Both Boyles & Hildreth and United States Surety were ultimately dismissed from the proceedings below, and the Town of Clay is the sole respondent in this appeal.

3

Following the taking of some evidence at a hearing held on December 7, 2010, the circuit court ruled that:

> I'll tell you what I'll do, I can see now that this hearing is going to take quite a long and lengthy time. Pursuant to Rule 65(a) of the Rules, I'm going to consolidate the hearing with this preliminary hearing in the matter. And I'm going to, at this point, issue a temporary injunction in the matter, finding that there is immediate and irreparable injury and loss or damage that could occur to Multiplex; they would be forced into bankruptcy and there could be a potential of the assets of Art Poff and Pamela Poff being at dire circumstances. And I'm going to continue this hearing and I'm consolidating, the rules allow me to do that. I'm going to temporarily order, pending a full hearing, both the preliminary and the entire hearing in the matter, that the Town of Clay shall not declare Multiplex in default of the contract. I'm going to prohibit US Surety from collecting any money from Multiplex or Art Poff or Pamela Poff. I'm not going to address the issue of whether to order the town to issue a change order or to answer Multiplex['s] questions; that's an issue that I will address at the hearing in the matter.

The court set a hearing for January 27, 2011, and took under advisement the petitioners' request for mediation. Shortly after the hearing had concluded, the following exchange took place in chambers:

> THE COURT: Let the record reflect that counsel is back in Chambers with the Court. I failed to set a bond, and I believe the rule requires that I set a bond. I'm setting it for $25,000 in the matter. Okay. I'll note and preserve all parties' objections. The injunctive relief would not take affect [sic] until the bond is posted.

MR. MORRIS: Your Honor, we would be happy to post a bond. We can do that forthwith. Although, quite frankly, we had estimated that the only likely harm, there was little or no monetary harm associated to the defense with our request of a, simply, status quo TRO. We had hoped for something – we could, we could post cash to the Court in roughly the ten percent amount immediately, or very close to it, would be my guess.

THE COURT: Court will permit the ten percent to be posted, cash or surety.

MR. MORRIS: In cash, which would be the – that would be great and we can post that.

THE COURT: Ten percent or surety.

On December 21, 2010, the Town of Clay filed a motion to dismiss the Complaint, or in the alternative, to dissolve the temporary restraining order and preliminary injunction. No response to this motion was filed by the petitioners,[4] and the circuit court never issued a ruling thereon.

The parties began discovery on the underlying contract issues raised in the Complaint,[5] and as a result of the volume of information sought by respondent, the petitioners filed a motion seeking to reschedule the January 27, 2011, hearing. By order

---

[4]The respondent concedes, however, that the petitioners orally opposed the motion at a hearing held on January 6, 2011.

[5]Although the circuit court questioned whether the underlying Complaint actually set forth a breach of contract claim in addition to a claim for injunctive relief, the parties proceeded as though it had.

5

dated January 13, 2011, the circuit court referred the matter to a special commissioner for mediation and cancelled the January 27, 2011 hearing.

Thereafter, the petitioners moved to voluntarily dismiss the Complaint, and by order dated January 21, 2011, the court granted the motion. The court made the following relevant findings:

> 2. Dismissal of the Plaintiffs' Complaint for Preliminary Injunctive Relief will not prejudice the Defendants.[6] No counterclaim has been filed by the Defendants which would require independent adjudication by the Court.
>
> 3. Accordingly, Plaintiffs' request for preliminary injunction is hereby dismissed WITH PREJUDICE; all other claims and remedies sought are hereby dismissed WITHOUT PREJUDICE.[7]

On January 26, 2011, the Town filed a motion seeking to forfeit the injunction bond, and for "attorneys' fees, costs, and sanctions[.]" In this regard, the Town sought reimbursement for $47,186.08 in fees and costs allegedly expended in contesting the injunction from the date it was entered, December 7, 2010, to the date the petitioners voluntarily dismissed their case, January 21, 2011. The gist of the motion, which may fairly

---

[6]At the time the order was entered, Boyles & Hildreth and United States Surety were still parties to the case. *See* n.1 *supra.*

[7]Because this order had not been circulated to counsel as contemplated by Trial Court Rule 24.01(b) & (c), the circuit court prepared another order and entered it on January 25, 2011. The January 25, 2011, order contains one minor change that is not material to this appeal.

6

be termed a broadside, was that the petitioners' injunction suit had been filed in bad faith,[8] was filled with falsehoods, and was intended "to loot the Town of Clay's public fisc." By order entered on February 5, 2011, the court referred the motion to the special commissioner. Significantly, the order stated that "[t]he Clerk of this Court shall not release the $25,000.00 bond that was posted by the Plaintiffs. The Clerk of this Court shall hold the $25,000.00 bond in his account, until such time as the Court resolves the Town of Clay's Motion to Forfeit Bond."

In drawn-out proceedings before the special commissioner,[9] the petitioners sought, and the respondent Town resisted, production of invoices and checks evidencing the payment of the town's attorney fees and costs.[10] Instead, the Town produced a three-line summary:

---

[8]The respondents claimed that because petitioners had an adequate remedy at law – and knew they had such a remedy – their purpose of seeking an injunction was to secure "an umbrella under which to operate and negotiate with the Town until his [petitioner Art R. Poff] comprising [sic] admissions and statements against his interest on July 27, 2010, were discovered."

[9]In his report dated November 14, 2011, the commissioner noted that some delay resulted from the parties' failure to provide him with pleadings and documents that he had requested; and that further delay resulted from the parties' indication to him "that they had reached a resolution in principle that would end this litigation[,]" after which there ensued two months "of either negotiation or neglect" and no settlement.

[10]The Town claimed, in response to discovery requests, that the invoices and checks were "shielded from disclosure under the attorney client privilege, and work product doctrine"; and further claimed, in response to a request made under the Freedom of Information Act, W. Va. Code § 29B-1-1 to -7 (2012), that the Town's invoices from its counsel "are not a public record[.]"

7

Bill Date January 15, 2011, $20,722.26; Bill Date February 3, 2011, $18,820.21; and Bill Date March 31, 2011, $7,643.50. The summary contained no description whatsoever of the work performed by the Town's counsel or the dates on which the work was performed. Not until November 22, 2011, when required by the special commissioner to provide itemized invoices together with an argument addressing the factors listed in *Aetna Casualty & Surety Company v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986), did the Town produce copies of invoices describing work performed and fees charged by its counsel during the time period in which the injunction was in effect.[11]

Of significance to these proceedings, the special commissioner's initial Report contains the following findings of fact:

> Multiplex argues that the basis for its Complaint for an injunction remains sound. It says that it prevailed on its Complaint, evidenced by the fact that a temporary injunction was granted, and that it cannot have its bond forfeited or be sanctioned on a Complaint on which it prevailed.
>
> . . .
>
> Achieving the temporary injunction is not the ultimate victory that Multiplex now claims it is. Being awarded a permanent

---

[11]We note that none of the entries from December 21, 2010, through January 19, 2011, appear, at least on the surface, to be related to dissolution of the injunction. Rather, they appear to be related to the parties' ongoing discovery and court-ordered mediation on the merits of the contract dispute. However, this is a factual matter to be resolved in the first instance by the circuit court, following a hearing and the taking of any evidence the parties may wish to present. *See* text *infra*.

injunction and relief from performing the contract pending receipt of answers to the proposed questions would have been the victory. Multiplex folded up the game board before it allowed anyone to determine the result of the game. There is no reason on the record that shows that Multiplex had grounds for the injunction it sought, allegedly based on questions it claims the Town needed to answer. Now that issue is dismissed with prejudice, there will never be an answer to whether the request for the injunction was based upon solid grounds.

Further, the special commissioner's initial report contains the following recommendations to the circuit court that are relevant to this appeal:

1.    The Town of Clay is entitled to at least some of the proceeds of the bond posted by Multiplex because Multiplex filed a Complaint for a Temporary Injunction, well-founded or unfounded which delayed the Town of Clay from pursuing its business interests and resulted in the Town incurring certain expenses before it was allowed to resume its business activities, followed by Multiplex abandoning the Complaint after such delay and before the Court could determine the merits of the Complaint.

2.    The amount of the bond posted by Multiplex should be determined to have been set at $25,000.

3.    Any recompense to the Town of Clay should be limited to the amount of the Multiplex injunction bond, as Multiplex has not been shown to have acted in bad faith that additional sanctions should be imposed beyond that said bond.

The special commissioner issued his final report on February 14, 2012, recommending that the petitioners' bond be forfeited to benefit the Town of Clay "on the grounds of Multiplex's filing the unfounded action for an injunction which resulted in the Town of Clay incurring costs and attorney fees." The commissioner concluded that the invoices for legal

9

work during the time period in which the injunction was in effect were properly included in the fees to be awarded, although he found "that the amount for which Multiplex should be liable for abandoning its injunction action without any indication that the petition had any merit should not exceed the amount of the said bond."[12]

By order dated February 15, 2012, the circuit court adopted all recommendations made by the special commissioner; ordered that the bond be forfeited "as the Town of Clay proved to this Court that it suffered such expenses and costs resulting from Multiplex's having filed a Complaint for a Temporary Injunction, and then abandoning the Complaint before the Court could determine the merits of the Complaint[]"; and ordered the petitioners to pay the special commissioner's fees in the amount of $9,344.05.  Subsequently, the court stayed its order pending appeal.

## II.    STANDARD OF REVIEW

---

[12]The commissioner agreed with the petitioners that "these fees are expressed in large blocks that make it difficult for an outside person to review the invoices to determine their reasonableness[,]" and further agreed, although without citing any specifics, that the respondent's invoices included fees "that are not appropriate to tax against the bond."  It was for these reasons, the commissioner concluded, that "the legal fees should be reduced to an amount within the bond."

A case involving the dissolution of an injunction, after which the circuit court orders forfeiture of the injunction bond and payment of a party's costs and/or damages from the bond, presents mixed issues of law and fact. This Court has held that

> 'In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.' *Phillips v. Fox*, 193 W. Va. 657, 661, 458 S.E.2d 327, 331 (1995) (citation omitted).

Syl. Pt. 2, *Walker v. W. Va. Ethics Com'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). With respect to our review of the amount of the costs and/or damages awarded, we have held that

> '[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syl. Pt. 3, in part, *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959).

Syl. Pt. 1, *Heldreth v. Rahimian*, 219 W. Va. 462, 637 S.E.2d 359 (2006); *see also Martin v. W. Va. Div. of Labor Contr. Lic. Bd.*, 199 W. Va. 613, 616, 486 S.E.2d 782, 785 (1997) (award of attorney fees in mandamus action reviewed under abuse of discretion standard); *Hopkins v. Yarbrough*, 168 W. Va. 480, 489, 284 S.E.2d 907, 912 (1981) (award of attorney fees in action for delinquent child support reviewed under abuse of discretion standard).

## III. DISCUSSION

This Court has held that "'[a]n order of injunction is of no legal effect * * * [Code, 53-5-9], unless the court requires a bond, or recites in the order that no bond is required for good cause, or unless the movant is a personal representative.' Syl. Pt. 4, Syl., *Meyers v. Washington Heights Land Co.*, 107 W. Va. 632, 149 S.E. 819 (1929)." Syl. Pt. 2, *State ex rel. Lloyd's Inc. v. Facemire*, 224 W. Va. 558, 687 S.E.2d 341 (2009). "The purpose of the Legislature in requiring a bond was to supply [sic] a defect in the common law, which authorized a recovery on the issuance of an injunction only in cases where the suit was without probable cause, or was prosecuted with malice." *State ex rel. Meadow River Lumber Co. v. Marguerite Coal Co.*, 104 W. Va. 324, 326, 140 S.E. 49, 50 (1927).

In this case, there is no question that a bond was required, and that the bond was secured by the petitioners' payment of $2,500.00. As a threshold issue, the petitioners contend that the amount of the bond was not $25,000.00, the amount set by the court, but rather $2,500.00, the sum they tendered. On this point, we find the petitioners' argument to be frivolous.[13] The circuit court clearly stated at the December 7, 2010, hearing that "I'm setting [the bond] for $25,000 in the matter." When petitioner's counsel responded that "we could post cash to the Court in roughly *the ten percent* amount immediately[,]" the court agreed that it "will permit the *ten percent* to be posted, cash or surety[,]" after which the

---

[13]The special commissioner found that "the position that Multiplex has taken is without credibility."

12

injunction would be in effect. (Emphasis supplied.) In the vernacular, the circuit court gave the petitioners a break by allowing them to secure the bond with a ten percent cash payment in order that the injunction they sought could go into immediate effect. It is pure sophistry for the petitioners to now claim that because no bond document was ever filed evidencing the $25,000.00 amount, the $2,500.00 they paid to secure the bond is the total amount that can be recovered thereon. The duty to have a bond "acknowledged, or proved before the clerk" is with the party obtaining an injunction, *State v. Purcell*, 31 W. Va. 44, 52, 5 S.E. 301, 305 (1888), and the petitioners' failure to discharge this duty cannot be the basis for its subsequent claim that the total amount of the bond cannot be enforced. Without question, the amount of the bond at issue in this case was, and is, $25,000.00.

The petitioners also argue that because they dismissed their lawsuit, the injunction bond was not "dissolved" by the court and therefore West Virginia Code § 53-5-9 does not come into play. We disagree. Although "[t]he proposition is generally true that an injunction once granted and perfected brings about a condition or status of persons and things that can only be set at large by a dismissal of the bill, or by formal order of dissolution[,]" syllabus point one, *Atkinson v. Beckett*, 36 W. Va. 438, 15 S.E. 179 (1892), an injunction can be dissolved by necessary implication where "the life of the injunction was taken away by a distinct and explicit repudiation of the sole equity that gave it vitality and perpetuated it[.]" *Id.* at 442, 15 S.E. at 181.

13

In this case, when the petitioners dismissed their case, the injunction "dissolved into nothingness, as effectually as if the court had said, in so many words, 'Let it be dissolved.'" *Id.* For this Court to hold otherwise would be to set a precedent whereby a litigant, whose sole purpose is to evade the consequences of the statute and avoid forfeiture,[14] could dismiss his case "in the nick of time" and leave the other party without a remedy.

The petitioners' next argument, that the bond was not subject to forfeiture in the absence of a finding that the underlying suit was filed in bad faith, requires little comment. Although the respondent sought sanctions as well as forfeiture, and made numerous allegations of bad faith on the petitioners' part, it is clear from the record that both the special commissioner and the circuit court treated this from the outset as a straightforward bond forfeiture case. The special commissioner concluded (albeit without any real analysis) that the lawsuit had not been filed in bad faith, the court accepted the commissioner's findings in toto, and the respondent has not cross-appealed on the issue of whether it was entitled to sanctions.

---

[14]There is nothing in the record to indicate that the petitioners in this case acted with such purpose in mind when they dismissed their suit. Indeed, the record is silent as to why they dismissed the case while the underlying contract dispute was still ongoing, with no realistic prospect of a quick mediated settlement and in the absence of any agreement with the Town of Clay as to the allocation of the parties' fees and costs.

14

In a forfeiture case, the question of bad faith does not come into play; as this Court explained in *Meadow River Lumber*, the common law required such a showing, but West Virginia Code § 53-5-9 does not. 104 W. Va. at 326, 140 S.E. at 50. The statute provides, in relevant part, that an injunction bond shall be given "in such penalty as the court or judge awarding it may direct, with condition to pay . . . such damages as shall be incurred or sustained by the person enjoined, in case the injunction be dissolved[.]" This Court has consistently held that "[t]he defendant to a dissolved injunction has two remedies, – one (statutory) on the injunction bond; the other (common law) for the malicious use of judicial process, without probable cause." *Glen Jean, Lower Loup & D. R. Co. v. Kanawha, Glen Jean & E. R. Co.*, 47 W. Va. 725, 727, 35 S.E. 978, 978 (1900). Inasmuch as this case involves the former remedy, not the latter, the presence or absence of malice, probable cause or bad faith is immaterial.

The petitioners next argue that attorney fees and costs are not an element of damages that may be recovered in a bond forfeiture. The petitioners rely upon *Bush v. Carden*, 111 W. Va. 631, 163 S.E. 54 (1932), for the proposition that where an injunction is only ancillary to the main object of the suit, which was dismissed without prejudice, attorney fees and costs incurred are not recoverable from an injunction bond. This is not a fair reading of *Bush*, which holds in syllabus point two that "[i]n an action on an injunction bond, when the injunction is only ancillary to the main object of the suit, counsel fees paid for services *in the*

15

*suit as a whole*, are not recoverable." *Id*. at 631, 163 S.E. at 54 (emphasis supplied.)  In this regard, *Bush* was completely consistent with this Court's earlier decision in *Meadow River Lumber*, where we held in syllabus point two that

> [w]hen counsel fees and personal expenses are sought to be recovered as damages on an injunction bond, it is incumbent on the plaintiff to show either that injunction was the sole relief to which the suit pertained or that the fees and expenses were paid out solely for the purpose of procuring a dissolution of the injunction, as distinguished from expenditures for the hearing of the principal issues involved in the case.

104 W. Va. at 324, 140 S.E. at 49; *see also Meyers v. Washington Heights Land Co.*, 107 W. Va. 632, 149 S.E. 819 (1920); *Wolverton v. Holcomb*, 174 W. Va. 812, 329 S.E.2d 885 (1985).

The petitioners' next argument, that the attorney fees and costs incurred by respondent were not shown to have resulted from its efforts to secure a dissolution of the injunction, merits more discussion.  As noted, our precedents make it clear that only attorney fees and costs incurred by the party enjoined, for the purpose of securing a dissolution of the injunction, are recoverable as damages under the statute.  *See State ex rel. Shatzer v. Freeport Coal Co.*, 144 W. Va. 178, 181, 107 S.E.2d 503, 506 (1959) (distinguishing between costs

16

incurred in seeking dissolution of an injunction and damages incurred as a result of the injunction); *Bush*, 111 W. Va. at 634, 163 S.E. at 55 (to same effect).[15]

In the instant case, notwithstanding the special commissioner's acknowledgment that the invoices for attorney fees were "block entry" invoices with no indication of the time devoted to individual tasks, and notwithstanding that many of the entries on the invoices appear to relate to the Town's defense on the merits, *see* notes 11 & 12 *supra*, the commissioner simply reduced the fees to the total amount of the bond, $25,000.00, apparently concluding that this solved the problem. The circuit court accepted the commissioner's report in toto, without giving the petitioners an opportunity to present evidence or argument to support their objection thereto. Based on our review of the record, this Court finds that the commissioner's analysis was flawed and the circuit court therefore erred in accepting his findings.

---

[15]Although the petitioners interject in their brief the issue of whether the respondent suffered any damages as a result of the injunction, that is not relevant in this case inasmuch as the circuit court's order limited forfeiture to the fees and costs incurred by the respondent. And in any event, documentation in the appendix record indicates that the respondent was paid for any "delay damages" when United States Surety tendered a check in the amount of $899,000.00, which included payment for damages incurred as a result of project delay during the period in which the injunction was in effect.

17

Although a percentage reduction may well be a proper approach when evaluating the reasonableness of a fee request supported by block entry invoices,[16] it is wholly insufficient where the threshold question is whether the legal tasks are compensable at all. In this case, the threshold question was whether the legal fees incurred by the Town resulted from its attempt to secure a dissolution of the injunction, in which case the fees were payable from the bond, or from the Town's defense on the merits of the contract action, in which case the fees were not.[17] Neither the special commissioner nor the circuit court ever analyzed the fee

---

[16]Many courts will reduce fees where "block entry" invoices are presented. *E.g., Orthopedic Assoc. of 65 Pennsylvania Ave. v. Sedor*, Nos. 3:00-cv-238 (GLS) & 3:02-cv-255 (GLS), 2011 WL 4074320, at *8 (N.D.N.Y. Sept. 13, 2011) ("the single-block entries for the period from January to October 2001 render a meaningful evaluation of their reasonableness impossible, which warrants a 10% reduction of the fees from that period"); *Bostic v. Am. Gen. Fin., Inc*., 87 F.Supp.2d 611 (S.D.W.Va. 2000) (reducing fee request by 15% where documentation of hours was inadequate).

[17]In syllabus point two of *Meadow River Lumber*, we held that following dissolution of an injunction, a party seeking to recover its attorney fees from the bond must prove "either that injunction was the sole relief to which the suit pertained or that the fees and expenses were paid out solely for the purpose of procuring a dissolution of the injunction[.]" 104 W. Va. At 324, 140 S.E. at 49. In this case, although the circuit court at one point indicated its belief that the petitioners' Complaint set forth a prayer for injunction and nothing more, all of the parties treated the complaint as setting forth a cause of action for breach of contract. In this regard, before the petitioners dismissed the case, the parties had commenced discovery on the merits and undertaken efforts to mediate the claim. In light of these facts, the Town does not, and indeed could not, claim that "injunction was the sole relief to which the suit pertained." Thus, in order to recover its fees from the bond, the Town must demonstrate that its "expenses were paid out solely for the purpose of procuring a dissolution of the injunction."

18

invoices to resolve this question, and indeed, it is difficult to imagine how they could have

done so in the absence of a hearing.[18]

The petitioners' final argument is that they were entitled to a hearing to determine the

reasonableness of the Town's attorney fees. We agree. It has long been established that

> '[w]here attorney's fees are sought against a third party, the test
> of what should be considered a reasonable fee is determined not
> solely by the fee arrangement between the attorney and his
> client. The reasonableness of attorney's fees is generally based
> on broader factor such as: (1) the time and labor required; (2)
> the novelty and difficulty of the questions; (3) the skill requisite
> to perform the legal service properly; (4) the preclusion of other
> employment by the attorney due to acceptance of the case; (5)
> the customary fee; (6) whether the fee is fixed or contingent; (7)
> time limitations imposed by the client or the circumstances; (8)
> the amount involved and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the undesirability of
> the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.'

---

[18]Counsel for the Town asserted at oral argument that the petitioners affirmatively waived their right to a hearing, relying, as evidentiary support for this assertion, on an e-mail of May 25, 2011, from the petitioners' prior counsel to the special commissioner. This e-mail is not a part of the voluminous appendix record, *see* note 1 *supra*, and by Order of November 14, 2012, this Court denied the Town's motion to supplement the record. The e-mail was not a part of the record below and therefore cannot be considered on appeal; dueling e-mails by or between counsel are not a substitute for record evidence.

In any event, we note that the petitioners filed numerous pleadings, both during and after the proceedings before the special commissioner, seeking discovery and complaining that their inability to cross-examine and test the Town's evidentiary submissions deprived them of due process of law. The petitioners made the same arguments in their objections to the commissioner's report. On these facts, this Court would not find an implied waiver even if the e-mail had been made a part of the appendix record.

> Syl. Pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342
> S.E.2d 156 (1986).

Syl. Pt. 12, *Horkulic v. Galloway*, 222 W. Va. 450, 665 S.E.2d 284 (2008).

The determination of whether fees are reasonable "is simply a fact driven question that must be assessed under the *Pitrolo* factors." *Id.* at 466, 665 S.E.2d at 300 (Davis, J., concurring). In order for a circuit court to determine those facts, it must allow the parties to present evidence on their own behalf and to test their opponents' evidence by cross-examination, "'the greatest legal engine ever invented for the discovery of truth[.]'" *California v. Green*, 399 U.S. 149, 158 (1970) (citing 5 Wigmore § 1367). *See Paugh v. Linger*, 228 W. Va. 194, 201, 718 S.E.2d 793, 800 (2011) (ordering, in reliance on *Pitrolo*, that "[t]he issue is remanded to the circuit court with directions to remand to the family court for entry of an order making findings of fact which would allow a court to engage in meaningful review of the award of attorney's fees."); *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 210 W. Va. 223, 229, 557 S.E.2d 277, 283 (2001) ("We have previously determined, on numerous occasions, that a circuit court has erred by failing to afford a party notice and the opportunity to be heard prior to awarding attorney's fees."); (*Statler v. Dodson*, 195 W. Va. 646, 653-55, 656, 466 S.E.2d 497, 504-06, 507 (1995) (remanding for a hearing on several issues including, "if appropriate, the reasonableness of the requested attorney's fees followed by the preparation of findings of fact and conclusions of law as predicates to the ultimate decision as to the amount of fees to be paid."); *Daily*

*Gazette Co. v. Canady*, 175 W. Va. 249, 251, 332 S.E.2d 262, 264 (1985) ("'Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.'") (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980)).

This Court's decision in *Corporation of Harpers Ferry v. Taylor*, 227 W. Va. 501, 711 S.E.2d 571 (2011), is not to the contrary. In *Harpers Ferry*, the petitioner had not contested the amount of attorney fees sought, and "[i]mportantly . . . *did not* request an evidentiary hearing. The City merely argued in its response that the evidence was insufficient to award attorney's fees." *Id*. at 506, 711 S.E.2d at 576. Noting that the petitioner's first request for an evidentiary hearing was made in its Rule 59(e) motion to alter or amend the judgment, we concluded that "Rule 59(e) is not a vehicle for a party to undo his/her own procedural failures or to advance arguments that could have been presented to the trial court prior to judgment." *Id*. (citing Franklin D. Cleckley, Robin J. Davis, Louis J. Palmer, Jr., *Litigation Handbook on the West Virginia Rules of Civil Procedure*, § 59(e), at 1179 (3d ed.2008)).

We have made clear that while a court is not required to make detailed findings on each and every element of the *Pitrolo* test, some being irrelevant in a given situation, the court must make findings sufficient to permit meaningful appellate review. *See Shafer v. Kings Tire Serv., Inc*., 215 W. Va. 169, 177, 597 S.E.2d 302, 310 (2004) ("Because our abuse

21

of discretion review is limited to analyzing whether the circuit court engaged in a proper balancing of applicable factors, we have found that a 'circuit court is required to make findings of fact and conclusions of law on the issue of attorneys' fees.'");[19] *Heldreth v. Rahimian*, 219 W. Va. 462, 470, 637 S.E.2d 359, 367 (2006) ("While the trial court's findings relative to the fee award in this case amount to more than the summary conclusion of a specific fee award that this Court found deficient in [*Shafer*], the findings made in this case do not fully comport with what is required under both *Bishop Coal* [*Co. v. Salyers*, 181 W. Va. 71, 380 S.E.2d 238 (1989)][20] and *Pitrolo*."); *Erwin v. Henson*, 202 W. Va. 137, 143, 502 S.E.2d 712, 718 (1998) (finding that circuit court's order reducing fee request failed to

---

[19]The language quoted in *Shafer* was from this Court's decision in *Landmark Baptist Church v. The Brotherhood Mut. Ins. Co.*, 199 W. Va. 312, 316, 484 S.E.2d 195, 199 (1997). In *Landmark*, although we deemed the circuit court's findings to be "minimal," *id.*, we nonetheless upheld the circuit court's judgment because the record demonstrated that court had thoroughly considered the *Pitrolo* factors in arriving at its decision. In contrast, in this case there is no indication that either the special commissioner or the circuit court did any *Pitrolo* analysis, all of which flows from the absence of a hearing and the concomitant denial of an opportunity for petitioners to contest the fee invoices submitted by the Town of Clay.

[20]In *Bishop Coal*, while this Court agreed that attorney fees in a human rights case should be reduced to the extent that hours were devoted to issues on which the complainant did not prevail, we found "that in Ms. Salyers' case the appellant failed to refine its general argument to apply to the specific facts before us." 181 W. Va. at 83, 380 S.E.2d at 250. In contrast, in the instant case, the petitioners have argued that the Town is not entitled to attorney fees for hours devoted to litigating the merits of the case, and that the petitioners were precluded from establishing the specific facts against which to apply the law. We agree with both prongs of this argument.

22

provide sufficient reasoning to permit parties to "respond meaningfully . . . and . . . submit additional supporting written documentation or explanation").

In the instant case, because there was no hearing either before the special commissioner or the circuit court, and therefore no way for the petitioners to cross examine or otherwise meaningfully contest the Town's proffered evidence, there was nothing on which either the commissioner or the court could base findings of fact sufficient to permit meaningful review.[21]  Accordingly, the case must be remanded for the taking of evidence and the resolution of any material issues of fact.

In summary, we affirm the circuit court's ruling that the amount of the injunction bond was $25,000.00,  affirm the court's ruling that the respondents are entitled to recover attorney fees pursuant to West Virginia Code § 53-5-9, and affirm the court's implicit ruling that the respondents are entitled to recover attorney fees notwithstanding the special commissioner's finding that the petitioners did not act in bad faith.  However, because the circuit court did not make findings as to whether the Town's attorney fees were incurred in attempting to secure a dissolution of the injunction, and because the court did not hold a *Pitrolo* hearing in order to determine the reasonableness of the fees under the factors established in that case,

_____

[21]We do not understand the basis for the special commissioner's apparent belief that disputed issues of fact in this matter could be resolved by proffer.

23

we reverse and remand this case for a *Pitrolo* hearing, after which the circuit court shall make findings of fact and conclusions of law sufficient to allow meaningful appellate review in the event either party elects to file an appeal.

## IV.    CONCLUSION

The judgment of the Circuit Court of Clay County is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

24