**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 13, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Lawyer Disciplinary Board,**
**Petitioner**

**v.) No. 23-133**

**Donna E. Taylor,**
**Respondent**

## MEMORANDUM DECISION

The Lawyer Disciplinary Board ("the Board") initiated this disciplinary proceeding against the Respondent, Donna E. Taylor, a member of the West Virginia State Bar.[1] After the parties entered a joint stipulation regarding proposed findings of fact and conclusions of law, the Board's Hearing Panel Subcommittee ("the HPS") conducted a three-day evidentiary hearing. The HPS thereafter determined that the Office of Lawyer Disciplinary Counsel (the "ODC") had proven four of the charges contained in the five-count statement of charges. The HPS recommended that Count III of the statement of charges be dismissed on procedural grounds. The HPS recommended that Ms. Taylor's law license be suspended for one and one-half years, along with other recommendations.[2] The ODC objects to the HPS recommendation and asks that a three-year suspension be imposed.[3] Ms. Taylor, on the other hand, asks that the charges be dismissed.

After having reviewed the record and the parties' briefs and oral arguments in this case, and having considered the pertinent authority, we respectfully believe that the HPS erred in dismissing Count III. We also conclude that a harsher sanction is merited under the facts of this case, and that a more appropriate sanction is the three-year suspension requested by the ODC. We

---

[1]The Office of Lawyer Disciplinary Counsel is represented by Rachael L. Fletcher Cipoletti, Chief Lawyer Disciplinary Counsel, Kristin P. Halkias, Lawyer Disciplinary Counsel, and Renee N. Frymyer, Lawyer Disciplinary Counsel. Ms. Taylor is self-represented.

[2]The HPS also recommended that (1) upon reinstatement, Ms. Taylor's practice be supervised for one and one-half years by an attorney jointly selected by Ms. Taylor and ODC, with Ms. Taylor to meet with the supervising attorney fortnightly to improve the quality and effectiveness of Ms. Taylor's law practice so that the sanctioned behavior is not likely to reoccur; (2) Ms. Taylor comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure governing the duties of disbarred or suspended attorneys; (3) Ms. Taylor be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure; and; and (4) Ms. Taylor be ordered to pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

[3]The ODC also argues that the issue of potential supervised practice be addressed during any reinstatement proceedings, and not in this proceeding.

1

therefore modify the HPS's recommendation and order that Ms. Taylor be suspended from the practice of law for a period of three years. We also believe the issue of potential supervised practice in the future should be addressed during reinstatement proceedings, if any, and not in this proceeding. We adopt the remainder of the HPS recommendations. Because this Court finds that there is error in the HPS recommendation, but no substantial question of law, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for decision in a memorandum decision.

## I. Facts and Procedural Background

Ms. Taylor was admitted to the West Virginia Bar in 2017. She was elected Prosecuting Attorney of Boone County, West Virginia, on November 3, 2020, and assumed that position in December 2020. Prior to her election, she was an Assistant Prosecuting Attorney for Wood County, West Virginia for one year and was an Assistant Prosecuting Attorney for Kanawha County, West Virginia for approximately three months. In both positions she handled magistrate court matters.

On March 9, 2023, the Board issued a forty-two page, five-count statement of charges against Ms. Taylor. Count I alleged that Ms. Taylor improperly employed her boyfriend as an Assistant Prosecutor in Boone County. The statement of charges alleged that in so doing, she used her office for her own private gain or the private gain of another person and created a conflict of interest between her interests and the interests of her client, the public she was elected to serve, in violation of West Virginia Rules of Professional Conduct 1.7(a)(2)[4] and 8.4(d).[5] Count II alleged that Ms. Taylor failed to timely prepare orders in abuse and neglect and juvenile matters as directed by the Circuit Court of Boone County, in violation of West Virginia Rules of Professional Conduct

---

[4]West Virginia Rule of Professional Conduct 1.7(a)(2) provides, in pertinent part:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
. . .
(2) there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer.

[5]West Virginia Rule of Professional conduct 8.4(d) provides:

It is professional misconduct for a lawyer to:

(d) engage in conduct that is prejudicial to the administration of justice[.]

1.1,[6] 1.3,[7] 3.4(c),[8] and 8.4(d).[9] Count III alleged that Ms. Taylor failed to timely prepare abstracts of judgment and releases of judgment as required by West Virginia Code § 50-3-2a(g), in violation of West Virginia Rules of Professional Conduct 1.1,[10] 1.3,[11] 3.4(c),[12] and 8.4(d).[13] Count IV alleged that Ms. Taylor engaged in a course of dilatory behavior as Boone County Prosecuting Attorney, to wit, preparing numerous flawed and legally insufficient charging documents in felony criminal matters that were defective on their face and/or omitted essential statutory elements, failing to correct errors and/or repeating errors made in documents she prepared in court matters, failing to adequately prepare for grand jury and other court proceedings, failing to attend hearings in which she was to represent the State of West Virginia, and failing to timely prosecute criminal matters, in violation of West Virginia Rules of Professional Conduct 1.1,[14] 1.3,[15] 3.2,[16] and 8.4(d).[17] Count IV also alleged that Ms. Taylor adduced testimony in grand jury proceedings that mischaracterized the evidence in those cases in violation of West Virginia Rules of Professional

---

[6]West Virginia Rule of Professional Conduct 1.1 provides, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[7]West Virginia Rule of Professional Conduct 1.3 provides, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[8]West Virginia Rules of Professional Conduct 3.4(c) provides:

A lawyer shall not:

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

[9]*See supra* n.5.

[10]*See supra* n.6.

[11]*See supra* n.7.

[12]*See supra* n.8.

[13]*See supra* n.5.

[14]*See supra* n.6.

[15]*See supra* n.7.

[16]West Virginia Rule of Professional Conduct 3.2 provides, "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

[17]*See supra* n.5.

Conduct 3.3(a)(3),[18] 3.8(a),[19] and 8.4(d).[20] Count V revolved around a complaint filed with the ODC by the sister of a murder victim in the so-called "*Dickens* case." As a result of this complaint, the statement of charges alleged that for a murder trial, Ms. Taylor failed to speak with and prepare law enforcement in advance of trial, failed to properly mark evidence for trial, failed to properly lay a foundation to enter evidence at trial, failed to timely identify and provide advance notice of witness to the court and the defendant, and showed a general lack of familiarity with the case and a general lack of preparedness, in violation of West Virginia Rules of Professional Conduct 1.1,[21] 1.3,[22] and 8.4(d).[23] As part of this Count, the Board also alleged that Ms. Taylor failed to provide a verified response to the complaint when such was requested by the ODC, in violation of West Virginia Rule of Professional Conduct 8.1.[24]

---

[18]West Virginia Rule of Professional Conduct 3.3(a)(3), provides:

(a) A lawyer shall not knowingly:

. . .

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

[19]West Virginia Rule of Professional Conduct 3.8(a), provides:

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause[.]

[20]*See supra* n.5.

[21]*See supra* n.6.

[22]*See supra* n.7.

[23]*See supra* n.5.

[24]West Virginia Rule of Professional Conduct 8.1(b) provides, in pertinent part:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . .

4

The parties entered joint stipulations regarding proposed findings of fact and conclusions of law on July 25, 2023. Thereafter, the HPS conducted a three-day evidentiary hearing. At the end of the hearing, the HPS issued a fifty-three-page report. The following is a summary of the evidence and findings contained in the HPS report.

*Count I*

When Ms. Taylor was elected Prosecuting Attorney, the Boone County Prosecuting Attorney's Office had two assistant prosecutors, Jennifer Anderson and Timothy Gibson. Ms. Anderson subsequently resigned effective on or about January 4, 2021. At the December 29, 2020, meeting of the Boone County Commission, the Commission granted Ms. Taylor's request to hire an assistant prosecutor with an annual salary of $80,000 a year plus benefits. Shortly thereafter, Ms. Taylor hired her boyfriend, Branden Ledford, Esquire, for the position.

Subsequently, on March 4, 2021, the West Virginia Ethics Commission issued Advisory Opinion 2021-04 finding that Mr. Ledford received an unfair advantage in being hired in violation of the West Virginia Ethic Act's private gain provision. The Ethics Commission concluded that Ms. Taylor could not continue to employ Mr. Ledford and that she had thirty days from issuance of the advisory opinion to end Mr. Ledford's employment. On March 5, Mr. Gibson told Ms. Taylor that because of the Ethics Commission's opinion, she should resign from office. Ms. Taylor terminated Mr. Gibson's employment with the Boone County Prosecuting Attorney's office on March 5, 2021, while Mr. Ledford's employment lasted until March 15, 2021. Mr. Ledford's position was not refilled during Ms. Taylor's tenure as prosecuting attorney.

The HPS concluded that Ms. Taylor improperly employed her boyfriend, and in doing so, used her office for the private gain of herself or another. Therefore, the HPS concluded that Ms. Taylor created a conflict of interest between her own interests and the interests of her client—the public she was elected to serve. The HPS concluded that Ms. Taylor violated Rules of Professional Conflict 1.7(b) and Rule 8.4(d) in that her conduct was prejudicial to the administration of justice.

*Count II*

On May 13, 2021, the Honorable William S. Thompson, who at that time was Judge of the Circuit Court of Boone County, entered an administrative order finding that numerous orders in abuse and neglect cases and juvenile cases had not been prepared by the Boone County Prosecutor's Office. The administrative order listed ninety-eight missing orders from cases where hearings had occurred. The administrative order reflected that it was the circuit court's long-standing practice to require the prosecuting attorney to prepare the orders in abuse and neglect cases. Judge Thompson's order referenced cases heard between March 1, 2021, and April 28, 2021, and stated that the "inexcusable delay has led to these cases being held up from permanency, to paternity testing not being performed, to the unnecessary delay of dispositional hearings, to the

---

(b) . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

requirement of paying for the service of publication for amended petitions that were not filed, among other things."

The administrative order directed the Boone County Prosecutor's Office to formulate a written plan to be presented to the Court no later than five calendar days from entry of the order as to how it would comply with the court's order that the ninety-eight missing orders be prepared, and to fully prepare all missing orders within eleven days of entry of the administrative order.

On May 17, 2021, a complaint was opened against Ms. Taylor by the ODC and Ms. Taylor was requested to respond in writing. In her timely filed written response, Ms. Taylor attributed the delay in processing of orders to staffing issues and multiple quarantines due to COVID-19 exposures in the courthouse. She stated that within five days of receiving the administrative order, she submitted a written plan to Judge Thompson and then worked overtime with an assistant prosecutor to ensure the missing orders were completed within the allotted time.

The HPS concluded that the failure to timely prepare orders before being directed to by Judge Thompson violated West Virginia Rules of Professional Conduct 1.1, 1.3 and 3.4.

*Count III*

When a defendant is convicted in West Virginia of criminal offenses, there are costs, fines, forfeitures, or other penalties that may be imposed. West Virginia Code § 50-3-2a deals with how these obligations may be paid. Specifically, West Virginia Code § 50-3-2a(g) addresses situations when an obligation is not paid and becomes a judgment lien. West Virginia Code § 50-3-2a(g) provides:

> To record a judgment lien, the clerk shall notify the prosecuting attorney of the county of nonpayment and shall provide the prosecuting attorney with an abstract of judgment. The prosecuting attorney shall file the abstract of judgment in the office of the clerk of the county commission in the county where the defendant was convicted and in any county wherein the defendant resides or owns property. The clerk of the county commission shall record and index these abstracts of judgment without charge or fee to the prosecuting attorney and when recorded, the amount stated to be owed in the abstract constitutes a lien against all property of the defendant: Provided, That when all the costs, fines, fees, forfeitures, restitution, or penalties for which an abstract of judgment has been recorded are paid in full, the clerk of the municipal court shall notify the prosecuting attorney of the county of payment and provide the prosecuting attorney with a release of judgment, prepared in accordance with the provisions of § 38-12-1 of this code, for filing and recordation pursuant to the provisions of this subdivision. Upon receipt from the clerk, the prosecuting attorney shall file the release of judgment in the office of the clerk of the county commission in each county where an abstract of the judgment was recorded. The clerk of the county commission shall record and index the release of judgment without charge or fee to the prosecuting attorney.

The HPS recommended that this Count be dismissed as Ms. Taylor was charged with violations of West Virginia Rules of Professional Conduct 1.1, 1.3, 3.4(c), and 8.4(d) "because she failed to timely PREPARE abstracts of judgment and releases of judgment. W. Va. Code § 50-3-2a(g) requires the Magistrate Clerk to provide the prosecutor with the abstracts and releases. The prosecutor is only required to file them with the County Commission." The HPS reasoned that "[b]ecause [Ms. Taylor] was not charged with failing to file abstracts of judgment and releases of judgment," Count III should be dismissed.

*Count IV*

The ODC opened an investigation against Ms. Taylor alleging that Ms. Taylor prepared and filed indictments that failed to comply with applicable rules and/or laws in at least eleven cases. The HPS noted, for example, one case where the indictment recited that methamphetamine is a schedule I narcotic when it is a schedule II stimulant, where it recited that suboxone is a schedule IV-controlled substance when it is a schedule III narcotic, and where the indictment referenced a non-existent section of the West Virginia Code. In another case, the indictment for sexual abuse failed to identify a victim. And in a third case, a grand larceny indictment failed to set forth the specific property allegedly taken.

Of these eleven cases, the HPS found that in five of them, dismissal orders had been entered without prejudice, but the cases had not been re-presented to the grand jury as of the date of the HPS report, February 13, 2024. Moreover, in one case, there was an amended indictment containing, virtually word for word, counts that had been dismissed in the original indictment for insufficiency and where the amended indictment contained handwritten notes of unknown origin. Based on this and other evidence, the HPS found that Ms. Taylor violated Rules of Professional Conduct 1.1, 1.3, 3.2, and 8.4(d).

The HPS also concluded that Ms. Taylor violated West Virginia Rule of Professional Conduct 3.3 (requiring candor towards a tribunal) in two cases she handled, *State v. Harless*, No. 22-F-6, and *State v. W.*, No. 22-F-24, by mischaracterizing the evidence in those respective cases.[25]

In *Harless*, Defendant Harless was charged with second degree murder. At the preliminary hearing, the magistrate found no probable cause and dismissed the case. At the grand jury, Ms. Taylor solicited testimony from a Madison City Police Officer stating that the autopsy showed the victim had been shot in the back and once in the head. Testimony from this officer was that Harless stated he had been threatened by the victim by what appeared to be a strip of vinyl or plastic. After the grand jury indicted, several motions to dismiss were filed, including a motion alleging that the evidence and circumstances giving rise to the shooting had been materially mischaracterized by the officer to take any claim of self-defense or defense of others out of the equation. Counsel's motion cited a large amount of evidence that supported the initial finding of no probable cause made by the magistrate, including evidence of a pipe laying near the victim at the time of the shooting, corroboration of an attack that had been initiated by an out-of-control person, the victim's abuse of methamphetamine that was found in his system, and the victim's unyielding

---

[25]We use initials to protect the identity of juveniles. *See* W. Va. R. App. P. 40(e).

efforts to gain entry into the defendant's residence despite outstanding warrants and a domestic violence protective order. An agreed order of dismissal was entered on March 23, 2022.

In *State v. W.*, the defendant was indicted for child neglect resulting in death following the apparent suicide of her stepson. The indictment charged her with leaving a child alone with an unsecured firearm. The State subsequently moved to dismiss based on two Child Protective Services investigations that found neither the defendant nor her husband had engaged in any neglectful conduct.

The HPS additionally concluded that Ms. Taylor violated West Virginia Rule of Professional Conduct 3.8(a) (prohibiting prosecutor from prosecuting a charge that the prosecutor knows is not supported by probable cause) by prosecuting *State v. W.* and by prosecuting *State v. Castle*, No. 22-F-4. In *Castle*, Defendant Castle was hunting and shot what he thought was a bear. The bear turned out to be a man who had been root digging. Natural Resources Police Officer Tyler Lucan arrested Castle and charged him with failure to render aid pursuant to West Virginia Code § 20-2-57a(g).  Castle was subsequently indicted for failure to render aid and negligent shooting involving bodily injury or death under West Virginia Code § 20-2-57a(c). During the proceedings in the case, the arresting Division of Natural Resources officers informed the magistrate that they believed the incident was an accident.

Finally, the HPS concluded that Ms. Taylor violated West Virginia Rule of Professional Conduct 8.4(d) (conduct prejudicial to the administration of justice) in the case of *State v. S.*, No. 18-F-18, because Ms. Taylor attempted to gain improper advantage for the State. In *State v. S.*, the defendant was charged with sexually assaulting children from 2008 to 2017. The circuit court dismissed three counts of the original indictment for defectiveness and dismissed several other counts due to insufficient instruction having been given to the grand jury. Following prior continuances, the case was set to be tried on September 8, 2022. Despite the jury having been summoned and reporting on September 8, Ms. Taylor moved to continue the matter and sought a special grand jury and an extension of the April 2022 Term of Court. On October 6, the circuit court judge (Honorable Jay Hoke) entered an order ending the April 2022 Term of Court on October 21, 2022, and trial was rescheduled for October 18, 2022.

Following the special grand jury meeting on October 4, 2022, an amended indictment was returned in *State v. S.* The amended indictment charged several previously dismissed counts and added several additional counts. Six of the additional counts included a brand-new victim, three of the additional counts were identical to counts previously dismissed for defectiveness, and eight more counts were the same as counts that were dismissed due to insufficient grand jury instruction. The defendant was arraigned on the new indictment on October 7, 2022, with the trial date remaining as October 18, 2022.

At a hearing on October 7, 2022, the defendant argued it was impossible to prepare a defense for the previously unindicted crimes in eleven days. The circuit court reset the trial for December 13, 2022, which prompted the defendant to move to dismiss the indictment under the

8

three-term rule.[26]  The circuit court agreed with the defendant's arguments, finding that the new counts were presented by Ms. Taylor to the special grand jury, with no new discovery, to force the defendant to seek a continuance that would not be charged against the State. The circuit court found that the State's conduct was an "apparent attempt to gain an advantage [and was] irresponsible, and inappropriate." Accordingly, the circuit court granted the motion to dismiss *State v. S.* under the three-term rule.

*Count V*

On January 23, 2023, the ODC received a complaint against Ms. Taylor filed by Audrey B. Blackburn. Ms. Blackburn's brother, Jeremy Peters, was a murder victim who was shot and killed. Kevin Dickens was indicted around April 26, 2022, for the murder of Mr. Peters and for wantonly endangering with a firearm three other individuals. On May 18, 2022, the circuit court set the trial for September 1, 2022. On or about May 19, 2022, Ms. Taylor submitted the State's Rule 16 supplemental discovery and request for reciprocal discovery. Ms. Taylor identified over 200 documents and tangible objects, including thumb drives and reports, and listed at least sixteen potential witnesses, including six law enforcement officers. By Order dated September 8, 2022, the trial was rescheduled for January 3, 2023, with a pretrial conference set for October 4, 2022.

The trial commenced on January 3, 2023. During trial, Ms. Taylor filed an amended witness list dated January 9, 2023, adding West Virginia Police Sergeant Charlie Sutphin as a witness. On January 11, 2023, Ms. Taylor filed another amended exhibit list and an amended witness list adding David Hodges. During a chambers conference held on January 12, 2023, Judge Stacy Nowicki-Eldridge stated, "[given] everything that has occurred thus far in the courtroom, I can't help but come to the conclusion in my mind that the State is either woefully unprepared or is not competent to try this matter." On or about January 12, 2023, for the third time in four days during the trial—and on the same day the judge admonished Ms. Taylor for filing late witness lists—Ms. Taylor filed another amended witness list adding West Virginia State Police Corporal

---

[26]The three-term rule is shorthand for West Virginia Code § 62-3-21 which is the legislative determination of what counts as a speedy trial under Article III, Section 14 of the West Virginia Constitution. Syl. Pt. 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986). The three-term rule generally requires a defendant be tried within three terms of court after an indictment or presentment is returned. Syl. Pt. 1, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972) ("Under the provisions of Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned. The term at which the indictment was returned can not [sic] be counted as one of the three terms."). The three-term rule contains several exceptions. For example, if the defendant procures a continuance, that term is not counted against the three-term rule. *Id*. at Syl. Pt. 2 ("Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62-3-21, as amended."). If the defendant is not tried within the requisite three unexcused terms of court, the defendant "shall be forever discharged from prosecution for the offense[.]" W. Va. Code § 62-3-21.

Jeffrey Matheny. On or about January 17, 2023, the circuit court declared a mistrial due to a COVID-19 outbreak in the courtroom.

By letter dated January 24, 2023, the ODC sent a copy of Ms. Blackburn's complaint and the ODC's standard notification letter to Ms. Taylor, requesting that Ms. Taylor provide the ODC with a verified response to the complaint within twenty days as required by Rule 2.5 of the Rules of Lawyer Disciplinary Procedure. When Ms. Taylor did not respond, the ODC sent a second letter to Ms. Taylor, via certified and regular United States mail, which Ms. Taylor signed for on February 17, 2023. The ODC received an undated and unverified response from Ms. Taylor on February 24, 2023, which did not reflect that a copy of Ms. Taylor's undated and unverified response had been sent to Ms. Blackburn for her review.

Ms. Taylor submitted a letter to the Boone County Commission on May 31, 2023, asking that it accept her resignation effective June 4, 2023. Ms. Taylor's resignation stated, "[t]his resignation is due the hostile work environment and unrealistic work expectations. I can no longer keep coming into the office under these conditions."

The HPS concluded that Ms. Taylor's conduct in the *Dickens* trial "demonstrated that she does not possess the legal knowledge, skill, and thoroughness required to adequately represent the State" and that "[f]urther, such conduct could jeopardize the State's ability to obtain a conviction, and impact the strength of the record on appeal[.]" The HPS concluded that Ms. Taylor violated West Virginia Rules of Professional Conduct 1.1, 1.3, and 8.4(d).

The HPS also concluded that because Ms. Taylor had direct supervisory authority over other lawyers in her office and failed to make reasonable efforts to ensure that their conduct conformed to the rules, she violated Rule 5.1(b) of the West Virginia Rules of Professional Conduct: "[a] lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct." The HPS acknowledged that this specific rule was not listed in the statement of charges, but cited to the Syllabus in *Lawyer Disciplinary Board v. Stanton*, 233 W. Va. 639, 760 S.E.2d 453 (2014), which allows the imposition of discipline when an uncharged rule violation is within the scope of the alleged misconduct, the lawyer is given clear and specific notice, and the lawyer has an opportunity to respond. The HPS found that the *Stanton* requirements were met.

Finally, the HPS concluded that Ms. Taylor violated West Virginia Rule of Professional Conduct 8.1(b) in that she failed to provide a verified response to the *Blackburn* complaint.

*HPS Recommendation on Sanction*

When deciding what sanction to recommend, the HPS recognized that Ms. Taylor's misconduct violated her duties to the public, the legal system, and the legal profession. The HPS explained:

> As an elected official, [Ms. Taylor] owed a duty to the public to competently and effectively perform her job as prosecuting attorney. The testimony provided in these proceedings showed that practically as soon as [Ms. Taylor] assumed her

10

elected role, she made reckless and self-serving employment decisions that threw her office into chaos. The evidence reflected an unwillingness on the part of [Ms. Taylor] to fulfill her statutory duties or comply with longstanding court rules and procedures in her county.

The HPS also concluded that the evidence established that Ms. Taylor acted knowingly:

> The evidence in these proceedings clearly and convincingly supports that [Ms. Taylor] acted knowingly. [Ms. Taylor's] actions as demonstrated in these proceedings were not the result of simple negligence or mistake. The evidence reflects a systematic inability or indifference on the part of [Ms. Taylor] to properly perform the functions of her job. Importantly, [Ms. Taylor] did not provide evidence to demonstrate that she took reasonable steps to gain the competency needed to fulfill her professional obligations so as to overcome her prior deficiencies.

The HPS noted the intangible costs in that "[t]he pattern of misconduct on the part of [Ms. Taylor] detracted from the public confidence in the office of the prosecutor and has brought the legal system in Boone County into disrepute[,]" as well as "the harm done to children and families and the [Department of Health and Human Resources] in abuse and neglect cases due to lack of orders on the part of [Ms. Taylor's] Office." The HPS additionally recognized that "[b]eyond the potential threat to public safety, the dismissal of criminal cases because of procedural flaws or prosecutorial misconduct is a waste of public funds."

The HPS then identified several aggravating factors in the case, including that: (1) Ms. Taylor occupied a public office; (2) Ms. Taylor evidenced a pattern and practice of misconduct involving competence, diligence, and conduct prejudicial to justice; and (3) Ms. Taylor "has not taken full responsibility for the wrongful nature of her conduct and has, instead, blamed others for situations she created or exacerbated."

With regard to mitigating factors, for Count I the HPS found that Ms. Taylor terminated Mr. "Ledford" on March 5, 2021, the day after the Ethics Commission issue Advisory Opinion 2021-04.[27] In Count II, the HPS found that there were mitigating circumstances in that the missing orders occurred during Ms. Taylor's first term in office, that Ms. Taylor obeyed Judge Thompson's administrative order and prepared all the orders within the eleven-day window, and that Judge Thompson did not file an ethics complaint. In Counts IV and V, the HPS considered it mitigating that most of the witnesses had a personal or professional interest in the proceeding, that prosecutors have wide discretion in what cases to pursue and how to pursue them, and that independent expert testimony was not presented as to Ms. Taylor's strategies and competence. The HPS also believed that Judge Nowicki-Eldridge harbored hostility toward Ms. Taylor, which was a mitigating factor in the case. The HPS found as general mitigators that: (1) Ms. Taylor had not been previously disciplined, (2) Ms. Taylor's misconduct was not criminal, (3) that the Boone County Prosecuting Attorney's Office was short-staffed during Ms. Taylor's tenure, (4) Ms. Taylor had little prior

---

[27]As discussed *supra*, it was a different assistant prosecuting attorney, Mr. Gibson, whose employment was terminated on March 5.

experience in a prosecutor's office, and (5) Ms. Taylor resigned from the Prosecutor's Office before her term expired.

As noted above, the HPS recommended a one and one-half year suspension, with other recommendations.[28] The ODC filed an objection and requests a three-year suspension, while Ms. Taylor counters that all charges against her should be dismissed.

## II. Standard of Review

"The standards we use to decide a lawyer disciplinary matter are well settled[.]" *Law. Disciplinary Bd. v. Grindo*, 243 W. Va. 130, 136, 842 S.E.2d 683, 689 (2020). We begin by observing that "[u]nder our disciplinary rules, the ODC must prove its case by clear and convincing evidence." *Law. Disciplinary Bd. v. Aleshire*, 230 W. Va. 70, 75, 736 S.E.2d 70, 75 (2012); *see* W. Va. R. Law. Discip. Proc. 3.7 ("In order to recommend the imposition of discipline of any lawyer, the allegations of the formal charge must be proved by clear and convincing evidence."). We additionally recognize that,

> [a] *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Hearing Panel Subcommittee's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Hearing Panel Subcommittee's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994). Finally, while "we respectfully consider the HPS's recommended sanctions[,]" *Law. Disciplinary Bd. v. Schillace*, 247 W. Va. 673, 683, 885 S.E.2d 611, 621 (2022), we are not bound by such recommended sanction as "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

## III. Discussion

At the outset, the ODC challenges the HPS's recommended dismissal of Count III. The ODC asserts that the allegations in the statement of charges are more than sufficient to put Ms. Taylor on notice of her wrongdoing with regard to her failing to file abstracts and releases. We agree with the ODC.

While the statement of charges alleged that Ms. Taylor failed to *prepare* abstracts of judgment rather than failing to *file* them, we do not conclude this to be fatal. In the Syllabus of *Stanton*, 233 W. Va. 639, 760 S.E.2d 453, we held:

---

[28]*See supra* n.2.

A formal charge that a lawyer has violated the Rules of Professional Conduct must be sufficiently clear and specific to inform the lawyer of the alleged misconduct and should identify the Rules alleged to have been violated. Nevertheless, a lawyer may be disciplined for an uncharged rule violation if the uncharged violation is within the scope of the misconduct alleged in the formal charge, and if the lawyer is given: (1) clear and specific notice of the alleged misconduct supporting the uncharged rule violation; and (2) an opportunity to respond.

The failure to file abstracts or releases was clearly within the scope of the misconduct alleged in the statement of charges. Specifically, paragraph 32 of the statement of charges provided:

It is mandated by statute that the prosecuting attorney has the responsibility to *file* abstracts in the county of conviction and every county where the defendant resides or owns property, and upon receipt of notice of payment in full, *file* the release of judgment with the clerk of the county commission in every county where an abstract of judgment was recorded. (emphasis added)

Moreover, Ms. Taylor was afforded the opportunity to respond to the failure to file issue during the testimony of Boone County Courthouse and Magistrate Court employee Elizabeth Summers, whose testimony at the evidentiary hearing revolved around Ms. Taylor's failure to file abstracts and releases. We therefore reject the HPS recommendation to dismiss Count III.

The evidence of record shows by the requisite clear and convincing standard that Ms. Taylor violated the Rules of Professional Conduct for Count III. The ODC presented testimony from Ms. Summers, whose duties included preparing abstracts of judgment. According to Ms. Summers, when she first provided a stack of abstracts to Ms. Taylor's office, Ms. Taylor brought them back and "abruptly put them down and let me know it wasn't her responsibility to file those, that her office—and she referred to it was not a filing station, [and] that I needed to take care of it." Ms. Summers testified that there were at least 400 abstracts that Ms. Taylor refused to file and that even after Ms. Taylor's resignation, the new Prosecutor's secretary was still finding stacks of abstracts that were not filed. Ms. Summer testified that it was not that Ms. Taylor did not understand the Prosecutor's role in the process, it was that Ms. Taylor "just felt that it wasn't her responsibility to do it." Ms. Summers also testified as to two instances where individuals had paid their fees, but no release was filed, which impacted their ability to secure loans.

Accordingly, we find that the ODC proved by clear and convincing evidence that Ms. Taylor failed to file abstracts of judgment and releases of judgment in violation of her clear statutory duty and thereby violated West Virginia Rules of Professional Conduct 1.1, 1.3, 3.4(c), and 8.4(d). As to the remaining counts in the statement of charges, we agree with the HPS that Ms. Taylor violated all of the other rule violations with which she was charged.[29]

---

[29]Although Ms. Taylor admitted in her summary response that she violated the Rules of Professional Conduct, she appears to challenge several of the HPS findings of fact and conclusions of law. First, she claims that Count I is untimely. *See* W. Va. Rule Law. Disciplinary Proc. 2.14

We now turn to the sanction appropriate for Ms. Taylor's misconduct. The HPS recommended that Ms. Taylor be suspended from the practice of law for one and one-half years. We respectfully disagree and believe that a three-year suspension is warranted in this case.

We have held:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. Pt. 3, *Comm. on Legal Ethics of W. Va. State Bar v. Walker,* 178 W. Va. 150, 358 S.E.2d 234 (1987). We are guided in this endeavor by Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure:

> In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

We turn to analyzing these factors.

---

("Any complaint filed more than two years after the complainant knew, or in the exercise of reasonable diligence should have known, of the existence of a violation of the Rules of Professional Conduct, shall be dismissed by the Investigative Panel."). We do not address this claim as Ms. Taylor's summary response does not set forth where, when, or how she raised this issue before the HPS. "As we have stated, '[j]udges are not like pigs, hunting for truffles buried in briefs [,]' *State Department of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), and the same observation may be made with respect to appendix records." *Multiplex, Inc. v. Town of Clay*, 231 W. Va. 728, 731 n.1, 749 S.E.2d 621, 624 n.1 (2013).

Second, to the extent Ms. Taylor alleges that she was not charged with a Rule 5.1 violation, we also believe that she has failed to sufficiently brief this issue by not discussing the Syllabus in *Stanton*, 233 W. Va. 639, 760 S.E.2d 453. Moreover, she claims that Rule 5.1 is inapplicable to prosecutors, which is incorrect. "Like other lawyers, prosecutors are subject to Rule 5.1 and 5.3[.]" W. Va. R. Pro. Cond. 3.8, cmt. 6. Ms. Taylor's summary response is insufficient to raise any other objections to the statement of charges or the HPS report and this memorandum decision should be read in light of that recognition.

14

(A) *Ms. Taylor violated a duty owed to a client, to the public, to the legal system, or to the profession.*

We do not tarry long on this factor as Ms. Taylor admits in her summary response before us that "[i]t is without question that while serving as the elected Prosecutor for Boone County, [she] engaged in conduct in violation of the *Rules of Professional Conduct* and therefore violated duties to her clients, the public, the legal system and legal profession[.]"[30]

(B) *Ms. Taylor acted knowingly.*

We also agree with the HPS that Ms. Taylor's actions were knowing. The American Bar Association defines "knowledge" as the "'conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.'" *Law. Disciplinary Bd. v. Sayre*, 242 W. Va. 246, 253–54, 834 S.E.2d 721, 728–29 (2019) (quoting ABA Standards for Imposing Lawyer Sanctions, Definitions (2015)). We agree with the HPS that "[t]he evidence reflects a systematic inability or indifference on the part of [Ms. Taylor] to properly perform the functions of her job. Importantly, [she] did not provide evidence to demonstrate that she took reasonable steps to gain the competency needed to fulfill her professional obligations so as to overcome her prior deficiencies."

(C) *The amount of the actual or potential injury caused by the misconduct.*

The HPS found "[t]he evidence reflects that the injury stemming from [Ms. Taylor's] chosen course of conduct was significant." We agree. The repeated dismissal of criminal cases due to obvious procedural errors and prosecutorial misconduct not only brought the criminal justice system into disrepute (an injury in and of itself), but it also represented a waste of finite public resources. *See Law. Disciplinary Bd. v. Busch*, 233 W. Va. 43, 55, 754 S.E.2d 729, 741 (2014) (per curiam) ("As a matter of public harm, the dismissal of criminal cases merely because of prosecutorial misconduct is a waste of public funds[.]"). Moreover, children in abuse and neglect cases were denied stability, security, and the opportunity for normal development due to Ms. Taylor's dilatoriness. *See, e.g.*, *In re S.L.*, 243 W. Va. 559, 566, 848 S.E.2d 634, 641 (2020) ("[W]e have noted the harm that can accompany delays in abuse and neglect matters, finding that '[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.' Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991)."). Finally, individuals were unable to obtain loans because of Ms. Taylor's failure to file releases of judgment.

(D) *Aggravating and mitigating factors.*

"Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed[,]" Syl. Pt. 4, *Law.*

---

[30]Ms. Taylor also admitted in her summary response filed with this Court that she "has clearly exhibited a pattern and practice of misconduct by failing to diligently pursue her clients' interests and [committed] multiple offenses."

*Disciplinary Bd. v. Scott*, 213 W. Va. 209, 210, 579 S.E.2d 550, 551 (2003), while "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.*, Syl. Pt. 2. We address these factors in turn.

1. *Aggravating factors*. The HPS found as aggravating factors that (1) Ms. Taylor exhibited a pattern and practice in the counts charged in the statement of charges relating to competence, diligence, and conduct prejudicial to the administration of justice; (2) Ms. Taylor has not taken full responsibility for the wrongful nature of her misconduct and has, instead, blamed others for the situations she created or exacerbated;[31] and (3) Ms. Taylor was a prosecuting attorney and "[e]thical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." Syl. Pt. 3, *Comm. on Legal Ethics of W. Va. State Bar v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989). We agree that these aggravating factors exist in this case.

2. *Mitigating factors*. The HPS found several mitigating factors. Our review of these factors, however, demonstrates that many of these so-called mitigators are either not mitigators at all, or should be considered only as weak mitigators.

First, the HPS considered it mitigating under Count I that Ms. Taylor fired her boyfriend, Mr. Ledford, from his position on March 5, 2021, the day after the Ethics Commission issued Advisory Opinion 2021-04. This is factually incorrect. According to the stipulated facts, Ms. Taylor fired Mr. *Gibson* on March 5, 2021. Mr. *Ledford* remained employed at the Prosecutor's office until March 15, 2021.

Second, the HPS concluded that it was a mitigating factor under Count II that Judge Thompson did not file a complaint with the ODC over the unfiled abuse and neglect and juvenile orders. We disagree that this is mitigating factor. Rather, if anything, we find Judge Thompson's testimony at the evidentiary hearing—that "if you can't protect your children, who can you protect in society?"—a clear condemnation of Ms. Taylor's conduct.

Third, the HPS considered it a mitigating factor under Count III that there was no timeframe provided within which an abstract or release had to be filed. We disagree that this is a mitigating factor for the same reasons that we have already found that the ODC proved Count III of the statement of charges.

Fourth, the HPS concluded that it was mitigating that most witnesses in the three-day evidentiary hearing had a personal or professional interest in the proceedings and that no independent expert witness was presented as to Ms. Taylor's strategies and competence. These are not mitigating factors but are claims relating to the strength or weakness of the case presented by the ODC.

---

[31]While Ms. Taylor in her summary response in this Court admitted that she violated the Rules of Professional Conduct, nonetheless she does not accept responsibility for her acts and omissions, but instead asks that the charges against her be dismissed and that the Board be ordered to reimburse her the costs of these proceedings.

Fifth, the HPS found it was a mitigating factor that prosecutors have wide discretion in what cases to pursue and how to pursue them. While it is true prosecutors generally have such broad discretion, the extreme circumstances of this case demonstrate why such discretion cannot excuse prosecutors from complying with the Rules of Professional Conduct. *See In re Toups*, 773 So. 2d 709, 715–16 (La. 20000) ("Because the prosecutor is given such great power and discretion, he is also charged with a high ethical standard."). Moreover, prosecutorial discretion does not extend to refusing to perform ministerial tasks, such as filing abuse and neglect orders and abstracts and releases of judgment.

Sixth, the HPS determined it mitigating that Ms. Taylor had not previously been disciplined. A lack of prior discipline is a particularly weak form of mitigator when the lawyer has only been licensed for a short time. "Because petitioner had been in practice only six years before the first act of misconduct, the absence of prior discipline is entitled to little weight in mitigation." *Cannon v. State Bar*, 800 P.2d 911, 918 (Cal. 1990).

Seventh, the HPS decided that it was a mitigating factor that Ms. Taylor had little prior experience in a prosecutor's office. We cannot agree with this characterization of Ms. Taylor's employment history. Ms. Taylor, in fact, had worked in the Wood County Prosecuting Attorney's Office for a year and had worked in the Kanawha County Prosecuting Attorney's Office for approximately three months before election to the position of Boone County Prosecuting Attorney. Moreover, Ms. Taylor chose to run for prosecuting attorney, and it was incumbent upon her to familiarize herself with all the duties of the office.

Eighth, the HPS concluded that it was a mitigating factor that there was some level of hostility exhibited by Judge Nowicki-Eldridge to Ms. Taylor. But many of the same problems that occurred in the Boone County Prosecutor's Office under Judge Nowicki-Eldridge also occurred under other judges. We do not find this claimed hostility to be a valid mitigating factor.

Finally, the HPS credited it as a mitigating factor that Ms. Taylor resigned her position as Boone County Prosecuting Attorney before her term expired. We are not convinced that resigning should be considered a mitigating factor in this case. *Cf*. ABA Standards For Imposing Lawyer Sanctions 9.4(d) ("The following factors should not be considered as either aggravating or mitigating: . . . resignation prior to completion of disciplinary proceedings[.]").

We believe that, at best, there were two mitigating factors in this case: (1) the Prosecutor's Office was short-staffed; and (2) Ms. Taylor's conduct was not criminal. The lack of criminal conduct is entitled to very little, if any, weight.

We reject Ms. Taylor's request that no discipline be imposed. Rather, after considering the evidence, rule violations, and aggravating and mitigating factors, a suspension is an appropriate sanction. The ABA Model Standards for Imposing Lawyer Discipline provides:

4.42. Suspension is generally appropriate when

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect [that] causes injury or potential injury to a client.

4.52. Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.

5.22. Suspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

As to the length of the suspension, we conclude that three years is comparable to discipline that we have imposed for similar misconduct. For example, in *Lawyer Disciplinary Board v. Busch*, 233 W. Va. 43, 754 S.E.2d 729 (2014), we imposed a three-year suspension on Mr. Busch for his misconduct while Prosecuting Attorney of Randolph County. This misconduct included making misstatements to opposing counsel and the circuit court, failing to comply with court orders, failing to respond to discovery requests, and placing responsibility for his misdeeds on others, in violation of Rules of Professional Conduct 3.3, 3.4, 3.8, and 8.4(c) and (d) in two separate cases. *See also Law. Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003) (prosecuting attorney's license suspended for three years based upon ethical violations of dishonesty for lying in and out of court and falsifying court documents). Accordingly, we reject the HPS's recommended period of suspension, and we instead order that Ms. Taylor be suspended from the practice of law in West Virginia for three years for her numerous violations of the West Virginia Rules of Professional Conduct across multiple cases. We adopt the other recommendations by the HPS, except for supervised practice, which should be addressed as part of any petition for reinstatement.

### IV. Conclusion

Based upon the foregoing, we impose the following sanction upon Ms. Taylor: (1) a three year suspension of her law license; (2) require Ms. Taylor to comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure governing the duties of disbarred or suspended attorneys; (3) require Ms. Taylor to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure where, among other issues, the issue of potential supervised practice can be addressed; and (4) order Ms. Taylor to pay the costs of the disciplinary proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Requirements.

**ISSUED:** November 13, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker

Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn